UNITED STATES of America

v.

Adrian ELLIOTT, Defendant.

Case No. 08–4160M.

United States District Court,
D. Maryland.

Dec. 23, 2009.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO SUPPRESS

THOMAS M. DiGIROLAMO, United States Magistrate Judge.

This matter is before the Court on the Motion to Suppress Evidence and Statements Obtained in Violation of Ms. Elliott's Privacy Rights Under HIPPA (the "Motion") filed by the defendant, Adrian Elliott.[1]

During the early morning hours of July 27, 2008, the United States Park Police received a report of a motor vehicle accident occurring on the Baltimore Washington Parkway[2] involving a vehicle that had possibly crossed over the grass median separating the northbound and southbound lanes. The accident occurred at approximately 4:30 a.m. United States Park Police Officer G. Ferreyra was one of the officers responding to the scene of the accident. When Officer Ferreyra arrived at the scene, he observed two vehicles that were involved in the accident. One vehicle, a Honda Civic, was sitting partially in the right northbound lane and partially on the shoulder, facing north. Officer Ferreyra observed damage to the left rear quarter panel and bumper of the Civic, and a short set of skid marks leading to the damaged portion of the vehicle. Mr. Robert Rodriguez was determined to be the driver of the Civic. The second vehicle, a Dodge, was across the median from the Civic,

---

1. At the hearing on the Motion, defense counsel advised the court that she was no longer seeking to suppress the defendant's statements because she had been assured by the Government's counsel that the Government did not intend to introduce any such statements.

2. The Baltimore Washington Parkway is a heavily travelled highway running between Washington, D.C. and Baltimore, Maryland. The accident occurred in an area of the Parkway which is in the special and maritime jurisdiction of the United States.

sitting partially in the right southbound lane and partially on the shoulder, but facing north, with its front end up against the retaining wall next to the shoulder. In relation to the Civic, the Dodge was somewhat north of it, but in the southbound lanes. The Dodge suffered significant damage. The defendant was the driver of the Dodge. Officer Ferreyra observed a set of tire tracks on the grass median leading from the Civic to the Dodge. Although Officer Ferreyra did not personally observe the accident and is not an expert in accident reconstruction, he formed an opinion as to how the accident occurred. Officer Ferreyra believed that the defendant had been traveling northbound on the Parkway. Mr. Rodriguez was sitting in his car, partially in the right northbound lane and partially on the shoulder. The defendant attempted to avoid striking the left rear of Mr. Rodriguez's car, but was unsuccessful and skidded into his car. The defendant's vehicle then travelled across the median into the southbound lanes and collided with the retaining wall off of the southbound shoulder. He based his opinion on his experience as a law enforcement officer, including his response to and investigation of motor vehicle accidents over the course of his career, and his observations at the scene.

When Officer Ferreyra approached the defendant's vehicle, he observed the defendant seated in the driver's seat. She was conscious, but bleeding badly. Officer Ferreyra believed that the defendant's injuries were severe and possibly life threatening. She appeared to be in a great deal of pain and kept trying to grab him. Officer Ferreyra smelled the odor of alcohol coming from the defendant's vehicle, but he did not observe any alcoholic beverages in or around the vehicle. He believed that she was under the influence of alcohol. Emergency medical personnel responded to the scene and transported the defendant to the Prince Georges Hospital Center ("PGHC") for treatment. No field sobriety tests were administered to the defendant. At the hospital, in the course of her treatment there, a sample of the defendant's blood was drawn and analyzed. Significantly, the blood was not drawn and analyzed at the direction or request of a law enforcement officer for law enforcement purposes, but by hospital personnel in connection with the defendant's treatment. In fact, Officer Ferreyra could not recall if any law enforcement officer was even present at the hospital when the defendant was treated.

As a result of its investigation, the Park Police charged Mr. Rodriguez with several offenses, including alcohol related driving offenses. On October 22, 2008, the Government issued a subpoena to the defendant commanding her to appear in court on January 29, 2009 to testify in the case against Mr. Rodriguez.[3] Prior thereto, however, on September 8, 2008, the Government issued a subpoena to the Prince George's Hospital Center, Custodian of Records, which subpoena commanded the Custodian of Records to provide to the Government certified copies of "medical records, including toxicologist reports, for Adrian E. Elliott ... female patient admitted on or about 7/27/08." That subpoena was issued by the Clerk of the Court. PGHC complied with the subpoena and provided the records to the Government. The records included a toxicology report which indicated that the defendant's blood alcohol concentration on the morning of the accident was .178 grams per 100 milliliters of blood. Thereafter, the Government charged the defendant with driving under

---

**3.** Mr. Rodriguez eventually pled guilty to driving with a blood alcohol concentration of .08g/100ml or more. Therefore, the defendant's testimony was not required.

the influence of alcohol and/or drugs in violation of 36 CFR § 4.23(a)(1) and driving with a blood alcohol concentration of .08 or more in violation of 36 CFR § 4.23(a)(2).

In support of the Motion, the defendant contends that the medical records obtained from PGHC, particularly the records related to her blood alcohol concentration, should be suppressed on two grounds. She contends that the records were obtained by the Government in violation of her rights under the Fourth Amendment. Alternatively, she contends that the records were obtained by the Government in violation of the Health Insurance Portability and Accountability Act ("HIPPA"), 42 USC § 1320d. Under either theory the defendant asserts that the appropriate remedy is the suppression of the records and all evidence flowing from them.

The Court has reviewed and considered the written memoranda submitted by counsel, the oral argument of counsel and the in court testimony of Officer Ferreyra. For the reasons stated below, the Motion is denied.

## A. *FOURTH AMENDMENT*

■ The defendant asserts that the Government obtained the results of the blood test in violation of her rights under the Fourth Amendment. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Indeed, the Supreme Court has held that an individual does possess a privacy interest in his blood for purposes of the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The Court must first determine whether the actual taking of the defendant's blood constituted a search or seizure under the Fourth Amendment.

■ The constitutional protections from searches and seizures are triggered only when government action is involved in the search or seizure. *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). The Fourth Amendment is not applicable " 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.' " *Jacobsen*, 466 U.S. at 113–114, 104 S.Ct. 1652 (*quoting Walter v. United States*, 447 U.S. 649, 662, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980)(Blackmun, J., dissenting)). A blood test conducted at the direction of a law enforcement official clearly falls within the ambit of protection under the Fourth Amendment. *Schmerber*, 384 U.S. at 766, 86 S.Ct. 1826. In this case, however, the defendant's blood was drawn by an employee of PGHC. The defendant does not argue that the withdrawal of her blood was done for anything other than a legitimate medical purpose or that the blood was drawn at the direction of the police. The defendant does not contend that PGHC is a government-owned hospital, or a governmental agent.

The defendant relies on the Supreme Court's decision in *Ferguson v. City of Charleston*, 532 U.S. 67, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001) to support her position. There the Supreme Court held that a state hospital's performance of diagnostic tests to obtain evidence of a patient's drug use for law enforcement purposes was an unreasonable search where the patient had not consented and the search was not authorized by a valid warrant. *Ferguson*, 532 U.S. at 83–85, 121 S.Ct. 1281. The Supreme Court noted that the hospital involved was a state hospital and that the members of its staff were government actors. Thus they were "subject to the strictures of the Fourth

Amendment." *Id.* at 76, 121 S.Ct. 1281. The Supreme Court also noted that the conduct of the hospital employees was undertaken pursuant to a policy developed by law enforcement officials, designed to obtain evidence of criminal conduct by the tested patients that would be turned over to the police and that could be admissible in subsequent criminal prosecutions *Id.* at 86, 121 S.Ct. 1281. The Supreme Court found that "The Fourth Amendment's general prohibition against nonconsensual, warrantless, and suspicionless searches necessarily applies to such a policy." *Id.* at 86, 121 S.Ct. 1281.

The facts of this case are distinguishable from those in *Ferguson.* First, the defendant does not allege that PGHC is a publicly owned facility or that its employees are agents of the government. Second, the defendant's blood was drawn for medical purposes, not for the purpose of obtaining evidence of criminal conduct. Third, there is no evidence that the police or any other government agent compelled or directed the hospital to draw and analyze the defendant's blood. Therefore, the Fourth Amendment was not implicated when the hospital drew the defendant's blood and analyzed the defendant's blood.

The facts of this case are similar to those in *United States v. Attson,* 900 F.2d 1427 (9th Cir.1990). The defendant in that case, Thomas Attson, lost control of his vehicle, drove off a road and crashed, resulting in the death of one of his passengers. He was transported to a public hospital for emergency treatment. The government conceded that the hospital employees who treated Attson were employees of the federal government. At the hospital, Attson signed a consent form allowing him to receive medical care. The trial court found that by signing the consent form Attson did not consent to the taking of blood for police use. Although Attson did not appear to be seriously injured, the medical personnel treating him detected the scent of alcohol on his breath. Thereupon the attending physician ordered that a sample of his blood be drawn and analyzed for "medical reasons alone." *Id.* at 1429. After the blood sample was analyzed, the results remained with the hospital and were not divulged to the police. It was not until nearly one year after the accident that the hospital released the results of the blood analysis to the government pursuant to a grand jury subpoena. The prosecution introduced evidence of Attson's blood alcohol level at his trial for manslaughter.

The Court of Appeals for the Ninth Circuit affirmed the trial court's decision to deny Attson's motion to suppress the results of the blood analysis. The court noted that "... the fourth amendment will only apply to governmental conduct that can reasonably be characterized as a 'search' or a 'seizure.'" *Attson,* 900 F.2d at 1429. It then analyzed cases from the Supreme Court which considered the application of the Fourth Amendment to governmental conduct in a noncriminal context. It found that where governmental conduct is motivated by investigatory or administrative purposes, it will fall within the scope of the Fourth Amendment since such conduct constitutes a search or seizure and, conversely, where governmental conduct is not actuated by an investigative or administrative purpose, it will not be considered a search or a seizure for Fourth Amendment purposes. *Id.* at 1430–1431. The court also pointed out that the issue of whether or not the challenged conduct qualifies as conduct covered by the Fourth Amendment should not be confused with the issue of whether the defendant possessed a reasonable expectation of privacy in his blood. It recognized that in *Schmerber* the Supreme Court held that an individual possesses a privacy in-

terest in his blood for purposes of the Fourth Amendment. In regard to the interplay between these two Fourth Amendment issues, the Court stated:

But the question of whether the challenged governmental conduct is the type of conduct proscribed by the fourth amendment analytically precedes the question of whether there is a privacy interest at stake here. In other words, if the taking of Attson's blood sample was not the kind of governmental conduct regulated by the fourth amendment, his privacy interest under the amendment could not have been infringed by such conduct. Therefore, if we decide that the conduct challenged by Attson did not constitute a search or seizure under the fourth amendment, we do not need to reach the question of whether the taking of Attson's blood sample infringed upon any legitimate expectation of privacy he may have had.

*Attson,* 900 F.2d at 1431.

The court held that since Attson's blood was drawn and analyzed for purely medical reasons, the attending physician did not possess the requisite intent to engage in a search or seizure under the Fourth Amendment. The court noted that the doctor did not intend to elicit a benefit for the government in its investigative or administrative capacity, but instead "acted for a reason entirely independent of the government's interest to collect evidence for use in Attson's criminal prosecution." *Id.* at 1433. It therefore affirmed the trial court's refusal to suppress the evidence of Attson's blood alcohol level.

In *Attson* government employees of the hospital drew and analyzed the defendant's blood. In the instant case it was drawn and analyzed by nongovernment employees of PGHC. Since the Fourth Amendment generally protects people from the acts of government employees or agents,

*Attson* would seem to be a stronger case for suppression. The important fact in this analysis, however, is not so much the status of the person drawing and analyzing the blood, but the purpose for which it was drawn and analyzed. As noted in *Attson* "where a private party acts as an 'instrument or agent' of the state in effecting a search or seizure, fourth amendment interests are implicated." *Id.* at 1432, *citing United States v. Walther,* 652 F.2d 788 (9th Cir.1981). Since the defendant's blood was drawn and analyzed for medical purposes, and not for any governmental investigative or administrative purpose, the Fourth Amendment is not implicated. Therefore, the Court finds that since the taking of the defendant's blood was for medical purposes, the Fourth Amendment was not implicated and the admission at trial of the test results will not be denied on this ground. The Court does not, therefore, need to reach the issue of whether the taking of the defendant's blood infringed upon any legitimate expectation of privacy she may have had.

### B. *HIPPA*

■ The defendant also contends that the records should be suppressed because they were obtained by the Government in violation of HIPPA. HIPPA is the primary federal law which was passed to ensure an individual's right to privacy over medical records. *United States v. Zamora,* 408 F.Supp.2d 295, 298 (S.D.Texas 2006). It governs the confidentiality of medical records and regulates how and under what circumstances "covered entities" may use or disclose "protected health information" about an individual. The term "covered entities" is defined to include health care plans, health care clearinghouses and health care providers. 45 CFR §§ 160.102, 164.104. "Protected health information" includes all individual-

ly identifiable health information maintained or transmitted in any form, as well as any oral statement made about medical treatment or conditions. 45 CFR § 160.103. Generally, HIPPA prohibits the use and disclosure of an individual's protected health information unless the individual has authorized its use and disclosure. HIPPA provides, however, that a covered entity may use or disclose protected health information without the written authorization of the individual or the opportunity for the individual to agree or object in certain limited circumstances. 45 CFR § 164.512. One of those exceptions is where a law enforcement official seeks protected health information for a law enforcement purpose. 45 CFR § 164.512(f).

Here the Government sought to obtain the defendant's medical records for a law enforcement purpose. Under the law enforcement exception, a covered entity may disclose protected health information for a law enforcement purpose to a law enforcement official if certain enumerated conditions are met. The relevant condition in this case is found at 45 CFR § 164.512(f)(1)(ii)(A) which provides that a covered entity may disclose protected health information for a law enforcement purpose to a law enforcement official "in compliance with and as limited by the relevant requirements of a court order or court-ordered warrant, or a subpoena or summons issued by a judicial officer." The defendant asserts that the subpoena which the Government issued to PGHC was not a "subpoena or summons issued by a judicial officer" as required under the law enforcement exception. The subpoena in question was directed to Prince George's Hospital Center, Attn. Custodian of Medical Records. It directed the Custodian of Records to mail a "certified copy of medical records, including toxicologist reports, for Adrian E. Elliott ... female patient admitted on or about 7/27/08" to the assistant United States attorney at her office. It also directed the Custodian of Records to appear at the United States Courthouse, Room 400 on September 18, 2008 at 11:00 a.m.[4] The subpoena was in the form of a standard trial subpoena. It was issued by "Clerk of Court—Felicia C. Cannon". The defendant argues that the Clerk of Court is not a judicial officer under the law enforcement exception and, therefore, her records should be suppressed because of this violation of HIPPA by the Government. The issue then is whether or not the Clerk of Court is a "judicial officer" for purposes of the law enforcement exception.

This question was addressed in the *Zamora* case. In that case the defendant was arrested for driving while intoxicated on federal property. While in police custody following her arrest she began to complain of asthma. Consequently, she was taken to a medical center for examination. There, she submitted to a blood alcohol test. Several months after the arrest, the government caused a subpoena to be served on the medical center commanding it to provide the government with the defendant's medical records from the date of the arrest to the present. The medical center moved to quash the subpoena and for protection from disclosing the requested records, arguing that, pursuant to HIPPA, it was prohibited from releasing the defendant's medical records. The subpoena in question was signed by "the Clerk of this Court". The government argued that the clerk was a "judicial officer" for purposes of the law enforcement exception to HIPPA. The court, finding no support for the government's position, found that the government did not properly comply with

---

**4.** Room 400 is the location of the Office of the    United States Attorney in the courthouse.

§ 164.512(f)(1)(ii)(A) in its issuance of the subpoena and refused to enforce the subpoena on that ground. *Zamora,* 408 F.Supp.2d at 298.

The Government has not provided, and the Court has not found, any compelling authority from which the Court could conclude that the Clerk of Court is a "judicial officer" under the law enforcement exception. The Court, therefore, finds that the subpoena in question did not comply with the requirements of HIPPA's law enforcement exception as it was not issued by a "judicial officer."

■ Although the defendant concedes that HIPPA does not expressly prohibit the use at trial of health information obtained in violation of its provisions, she argues that the appropriate sanction is the suppression at trial of the records the Government received as a result of the improper subpoena. The defendant has cited several cases in support of her argument, two of which address the issue of the disclosure of protected health information. In *United States v. Sutherland,* 143 F.Supp.2d 609 (W.D.Va.2001) the court denied a hospital's motion to quash the government's subpoena of certain medical records. The defendant doctor was charged with unlawful distribution and dispensing of controlled substances without a legitimate medical purpose and beyond the bounds of medical practice. The government issued subpoenas to a hospital to compel the production at trial of certain pharmacy records relating to prescriptions filled for certain named patients. The hospital moved to quash the subpoenas, arguing that compliance would subject it to civil liability for the production of privileged or confidential patient information. The court denied the motion to quash, but con-

ditioned the denial on the requirement that the government provide written notice prior to production of the subpoenaed records to the individuals whose records were sought. Significantly, *Sutherland* did not involve the law enforcement exception to HIPPA, but the judicial and administrative proceedings exception (45 CFR § 164.512(e)) which does require in certain circumstances that prior notice be provided to the person whose records are being sought.[5] The law enforcement exception contains no such requirement.

The defendant also relies on *Keshecki v. St. Vincent's Med. Ctr.,* 5 Misc.3d 539, 785 N.Y.S.2d 300 (N.Y.Sup.Ct.2004). This case involved a medical malpractice action by the plaintiff against the defendant doctor and hospital. Defense counsel served subpoenas on the plaintiff's treating physicians and, pursuant to those subpoenas, privately interviewed the plaintiff's physicians. Defense counsel had prior authorizations from the plaintiff to obtain records from her treating physicians, but not to conduct personal interviews. The court granted the plaintiff's motion to preclude the defendants from introducing opinion testimony from the plaintiff's physicians or using any information obtained from the physicians on the ground that defense counsel conducted unauthorized interviews of the physicians. The court held that in order to comply with HIPPA a defendant's counsel who wished to interview a plaintiff-patient's treating health care provider must first obtain a proper authorization from the plaintiff. The court noted that by subpoenaing the doctors, defense counsel created a false impression to the doctors that they were under an obligation to speak with them. *Keshecki,* 785 N.Y.S.2d at 305. Like *Sutherland,* however, this

---

**5.** Although HIPPA was not in effect at the time of the decision in *Sutherland,* the court referred to its provisions for guidance.

case also does not involve the law enforcement exception to HIPPA. The evidence was precluded because defense counsel obtained information which he was not authorized to obtain and the court ruled that the only adequate remedy to protect the plaintiff's right of privacy under HIPPA was to preclude the evidence.

■ Neither *Sutherland* nor *Keshecki* compel a finding that medical information obtained through the use of an improper subpoena under HIPPA's law enforcement exception should be prohibited from use at trial. As mentioned above, HIPPA itself does not provide that medical information so obtained must be suppressed. The Court is unaware of any authority which compels the suppression of the records at trial. Nevertheless, the Court must still determine whether or not suppression is appropriate. Federal courts have acknowledged the importance of protecting a patient's right to privacy in medical records. That right, however, is not absolute, and must be balanced against the government's interests in obtaining the information. *Sutherland*, 143 F.Supp.2d 609, 611–612 (W.D.Va.2001) As the court in *Zamora* observed "... HIPPA was passed to ensure an individual's right to privacy over medical records, it was not intended to be a means for evading prosecution in criminal proceedings". *Zamora*, 408 F.Supp.2d at 298.

Applying a balancing test, the Court finds that the Government's interest in obtaining records related to the defendant's blood alcohol concentration on the day of the accident are compelling. Federal, state and local authorities have a strong interest in prosecuting people who drive while under the influence of alcohol and/or drugs. As the Supreme Court noted "No one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it."

*Michigan Department of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 2485, 110 L.Ed.2d 412 (1990). "Drunk drivers cause an annual death toll of over 25,000 and in the same time span cause nearly one million personal injuries and more than five billion dollars in property damage." *Sitz*, 110 S.Ct. at 2485–86 In this case the defendant was involved in a serious accident in which she suffered serious personal injuries. The evidence showed that while travelling northbound at the Baltimore–Washington Parkway, she struck a parked car sitting partially on the road at 4:30 a.m., then travelled across the median into the southern lanes, and struck the retaining wall. The investigating officer smelled the odor of alcohol coming from the defendant's vehicle, but did not observe any opened container of alcohol in or around her car. The officer believed that she was under the influence of alcohol. He was not able to administer any field sobriety tests because of the extent of the defendant's injuries. Therefore, the officer did not have an important tool that is often available to law enforcement officers in assessing a driver's sobriety. Further, the defendant's blood was drawn and analyzed in connection with her treatment at the hospital and not at the direction of a law enforcement officer. Clearly, the Government has a strong interest in obtaining the records related to the defendant's blood alcohol concentration on the day of the accident. Under these circumstances, the Court finds that the Government's interest in obtaining the requested records outweighs the defendant's right to withhold them and the records will not be excluded from trial on this ground.

■ Throughout this proceeding, the defendant has characterized the Government's action of serving the improper subpoena on the hospital in terms of the Government "violating" HIPPA. HIPPA prohibits a "covered entity" from receiving and using protected health informa-

tion. 45 CFR § 164.502(a). Law enforcement agencies, including the office of the prosecuting attorney, are not covered entities under HIPPA. *United States v. Abdallah*, 2009 WL 1918401 at *6, No. H–07–155 (S.D. Texas July 1, 2009). In this case PGHC is a "covered entity" and it, arguably, violated HIPPA when, as a "covered entity", it provided the defendant's records to the Government in response to the improper subpoena. It could have moved to quash the subpoena, but it did not. HIPPA provides for criminal and civil penalties against entities that fail to comply with its provisions. 42 USC §§ 1320d–5, 1320d–6. The Court does not find that the Government violated HIPPA because it served an improper subpoena on the hospital. The Government's conduct is not governed by the provisions of HIPPA.

The defendant also argues that the Government violated the judicial and administrative proceedings exception of HIPPA. 45 CFR § 164.512(e). The defendant correctly points out that under the judicial and administrative proceedings exception, a covered entity my disclose protected health information in the course of any judicial or administrative proceeding in response to a subpoena that is not accompanied by an order of court if the person whose records are being sought received prior notice. 45 CFR § 164.512(e)(1)(ii). It is undisputed here that the subpoena was not accompanied by an order of court and that the defendant never received such prior notice. The Government does not rely, however, on the judicial and administrative exception. Its position is that the subpoena was properly issued under the law enforcement exception, but even if it was not, suppression of the records is still not the appropriate remedy.

Finally, the defendant argues that the records should be suppressed because the Government has not established the proba-

ble cause necessary to support their production. In essence, the defendant requests the Court to make an *ex post facto* probable cause determination, arguing that had the Government initially applied for a court order or court-ordered warrant, or a subpoena or summons issued by a judicial officer, it would have been denied for lack of probable cause; and therefore, the Government should not be allowed to use the records at trial. The defendant's reliance on *Zamora* in this regard is misplaced. In *Zamora* the covered entity moved the court to quash the subpoena *before* any records were released to the government. The court first held that the subpoena could not be enforced on the basis that it was issued by a judicial officer because the clerk of court was not a judicial officer. The court then noted that despite the failure of the government to properly serve the subpoena, it might still be entitled to the medical records based on a court order. The court construed the government's response to the motion to quash as a motion for a court order. The court then found that the government had established probable cause justifying the production of the records. It denied the motion to quash and ordered that medical center produce the records. *Zamora*, 408 F.Supp.2d at 298–300.

The instant case is clearly distinguishable. Unlike the medical center in *Zamora*, PGHC did not move to quash the subpoena on the ground that it was not issued by a judicial officer or on any other basis. Instead, it complied with the subpoena and provided the information to the Government. The Government is already in possession of the records. The defendant has not cited any authority, and the Court has not discovered any, which would allow such an *ex post facto* determination of probable cause under these circumstances. No judicial officer in this matter ever made a probable cause determination upon which the subpoena was issued. Accordingly,

there is no probable cause determination for this Court to revisit. The Court will not, at this stage, reconstruct a scenario that simply did not exist. The issue before the Court is whether the records which were obtained by the Government should be suppressed based on the manner in which they were obtained. The Court has determined that suppression is not the appropriate remedy.

## CONCLUSION

The defendant's motion to suppress evidence of the results of the blood analysis is **DENIED.** The denial is conditional, however. The Government's subpoena requested "medical records, including toxicologist reports". As the only purpose proffered by the Government for the introduction of the defendant's medical records is to prove her blood alcohol level on the day of the accident, the evidence will be limited to documents and/or information directly related to her blood alcohol level.

**Trial is scheduled for January 28, 2010 at 10:30 a.m.**