**Darren Ray CASTLEBERRY,**
**Appellant,**

**v.**

**STATE of Texas, Appellee.**

**Nos. 01–10–00158–CR, 01–10–00159–CR, 01–10–00248–CR, 01–10–00249–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 28, 2011.

Discretionary Review Refused
Sept. 14, 2011.

Jerald K. Graber, Houston, TX, for Appellant.

Eric Kugler, Assistant District Attorney of Harris County, Patricia R. Lykos, Harris County District Attorney, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

JANE BLAND, Justice.

The State issued an indictment charging Darren Ray Castleberry with four felony offenses, two involving sexual assault of a child under seventeen years of age and the other two involving sexual assault of a child under fourteen years of age. After the trial court denied Castleberry's pretrial motion to suppress, he pleaded guilty to the charges of sexual assault of a child under seventeen years of age without an agreement with the State as to punishment. On the remaining charges, Castleberry pleaded not guilty and waived his right to a jury trial. After a bench trial, the court found Castleberry guilty of the two charges of sexual assault of a child under fourteen years of age. The trial court assessed punishment of twenty years' imprisonment for the two charges to which Castleberry had admitted guilt and life in prison for the tried charges. On appeal, Castleberry contends that the trial court erred in denying his motion to suppress. Finding no error, we affirm.

## Background

Castleberry started sexually assaulting his stepdaughter, P., when she was eight years old. When P. and a fourth-grade classmate, A., became close friends, A. began to spend the night at P.'s house on weekends and holidays. Within a couple of years, Castleberry sexually assaulted A. as well as P. During some incidents, Castleberry would photograph the girls while they engaged in sexual conduct, plying them with alcohol and instructing them on what to wear and how to pose.

The abuse of both girls continued until 2003, when Castleberry took a job overseas. By then, P. and her mother had moved to live with P.'s grandfather, and Castleberry no longer lived with them. Before leaving, Castleberry gave P. a lockbox and key to keep for him while he was gone. He did not tell her what was inside the lockbox, but instructed her to destroy it and its contents if anything happened to him. P., who was seventeen years old at the time, agreed, and stored the lockbox in the closet of the room she had in her grandfather's house.

Castleberry remained overseas for several years. In late December 2005, when P. was nineteen years old, she finally told her mother about the sexual abuse. Her mother called the police, who told P. to stop all contact with Castleberry. P., fearing that Castleberry would return to kill her, quit her job in Houston and moved to her uncle's home in Dallas a few days later. While traveling there, P. called her mother, told her about the lockbox, and asked her to give it to the police.

P.'s mother retrieved the lockbox. Before bringing it to the police, she opened it to find computer disks, floppy disks, printed photographs, and other materials. On one of the disks, Castleberry had written "For My Eyes Only." P.'s mother opened it on a computer and saw that it contained over 300 pornographic images of P. and A.

In the meantime, P. contacted Castleberry's girlfriend overseas and sent her an Internet link to the local news story on the police investigation. When Castleberry learned that criminal charges were pending against him in Texas, he quit his job in Kuwait and became a fugitive. Approximately three years later, in January 2009, the authorities located Castleberry in Thailand, arrested him, and returned him to the United States to face the charges.

## Motion to Suppress

In his sole issue on appeal, Castleberry challenges the trial court's denial of his motion to suppress. We review the trial court's ruling on a motion to suppress for abuse of discretion. *Shepherd v. State,* 273 S.W.3d 681, 684 (Tex.Crim.App.2008). We view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State,* 214 S.W.3d 17, 24 (Tex.Crim.App. 2007) (quoting *State v. Kelly,* 204 S.W.3d 808, 818 (Tex.Crim.App.2006)). The trial judge is the "sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony." *St. George v. State,* 237 S.W.3d 720, 725 (Tex. Crim.App.2007). The trial court may choose to believe or disbelieve any part or all of a witness's testimony. *Green v. State,* 934 S.W.2d 92, 98 (Tex.Crim.App. 1996) (citing *Allridge v. State,* 850 S.W.2d 471, 492 (Tex.Crim.App.1991)). We defer to a trial court's express or implied determination of historical facts, as well as to its application of law to fact questions if those questions turn on the evaluation of a witness's credibility and demeanor. *See Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim. App.1997). We sustain the trial court's ruling if it is reasonably supported by the record and correct on any theory of law applicable to the case. *Laney v. State,* 117 S.W.3d 854, 857 (Tex.Crim.App.2003) (citing *Willover v. State,* 70 S.W.3d 841, 845 (Tex.Crim.App.2002)).

Castleberry contends that the warrantless seizure of the lockbox violated his privacy rights under the state and federal constitutions. *See U.S. Const.* amend. IV; TEX. CONST. Art. 1, § 9. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). An accused has standing to contest the seizure of personal property under the Fourth Amendment only if he has a possessory interest and a legitimate expectation of privacy in the property. *See id.* at 121–22, 104 S.Ct. at 1661–62; *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978) (holding that "capacity to claim the protection of the Fourth Amendment depends upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place"); *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex. Crim.App.1996) ("An accused has standing, under both constitutional provisions, to challenge the admission of evidence obtained by a governmental intrusion only if he had a legitimate expectation of privacy in the place invaded." (citing *Rakas,* 439 U.S. at 143, 99 S.Ct. at 430)). In claiming that he had a reasonable expectation of privacy in the lockbox at the time it was seized, Castleberry relies on evidence that: (1) he never intended to abandon the lockbox; (2) he wanted P. to keep the lockbox safe for him while he was overseas; and (3) he never gave anyone authority, permission, or consent to open or view the contents of the lockbox, except for his instruction to P. that she destroy the lockbox and its contents if anything should happen to him. Castleberry likens his agreement with P. to a bailment agreement. Under well-settled Texas law, however, a minor is bound by an agreement only if she chooses to be. *Dairyland Cnty. Mut. Ins. Co. v. Roman,* 498 S.W.2d 154, 158 (Tex.1973); *Swain v. Wiley College,* 74 S.W.3d 143, 146–47 (Tex.App.-Texarkana 2002, no pet.); *see* TEX. CIV. PRAC. & REM CODE ANN. § 129.001 (West 2005) ("The age of majority in this state is 18 years."); *see also Youngblood v. State,* 658 S.W.2d 598, 599 (Tex.Crim.App.1983) ("[I]t is risky business for an adult to knowingly enter into a contract with a person under the age of 18 ... because the adult is on notice that as a matter of law the minor

can during his minority avoid and disaffirm the contract."). As a result, Castleberry could not reasonably rely on his agreement with seventeen-year-old P. to protect his privacy in the lockbox and its contents.

Further, the relevant question is not whether an effective bailment existed, but whether P. had mutual access to and control over the lockbox. *See Welch v. State,* 93 S.W.3d 50, 55 (Tex.Crim.App.2002). The record shows that Castleberry gave P. both the lockbox and its key before he went overseas. Castleberry thus made no effort to secure the privacy of the lockbox's contents as against P., giving P. mutual, if not superior, access to and control over them. *See id.; see also United States v. Osunegbu,* 822 F.2d 472, 480 (5th Cir. 1987) (manager of private mailbox facility had authority to consent to search of defendant's mailbox where front of box was locked but back was open to access by employees sorting and arranging mail).

The record also shows that Castleberry never forbade P. from accessing the contents of the lockbox. The circumstances indicate that Castleberry assumed the risk that P. would consent to its seizure. *See Welch,* 93 S.W.3d at 57. After giving P. full access to and control over the lockbox and its contents, Castleberry could not have a reasonable expectation of privacy in them. We therefore hold that Castleberry lacked standing to challenge the seizure, and the trial court correctly denied his motion to suppress.

### Conclusion

We hold that the trial court did not abuse its discretion in denying Castleberry's motion to suppress. We therefore affirm the judgment of the trial court.