**Opinion issued June 25, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00970-CR

————————————

**HECTOR L. RODRIGUEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the County Criminal Court at Law No. 5
Harris County, Texas
Trial Court Case No. 1726063

## OPINION

The State charged Hector L. Rodriguez by information with Class B misdemeanor driving while intoxicated. *See* TEX. PENAL CODE ANN. § 49.04 (West Supp. 2014). Before trial, Rodriguez moved to suppress evidence of his blood-test results. After a hearing, the trial court denied the requested relief.

Pursuant to a plea bargain with the State, Rodriguez pleaded guilty to the charge. The trial court accepted the plea and agreed to follow the State's punishment recommendation, sentencing Rodriguez to 180 days' confinement and suspending that sentence conditioned on successful completion of one year of community supervision.

The trial court certified Rodriguez's right to appeal its ruling on his motion to suppress. On appeal, Rodriguez contends that the trial court erred in denying the motion because the State obtained his medical records and blood-test results in violation of state and federal law and his rights under the Fourth Amendment of the United States Constitution. We affirm.

## Background

The parties do not dispute the facts material to Rodriguez's motion to suppress. Close to 2:00 A.M. in late September 2010, Officer J. Roberts and Officer Pitts of the Houston Police Department were in the course of arresting two individuals for driving while intoxicated (DWI) in downtown Houston when they observed Rodriguez driving toward them, heading the wrong direction down a one-way street. The officers instructed Rodriguez to pull over, and Rodriguez came to a stop near Officer Pitts's patrol car.

After Officer Roberts secured the other two DWI suspects in the back of his patrol car, he approached Rodriguez's car. He noticed that Rodriguez had red,

2

glassy eyes and slurred speech, and smelled strongly of alcohol, as did the interior of his car. Rodriguez admitted that he had begun drinking beer at 3:00 P.M. the previous afternoon and that he had just left a nightclub.

Officer Roberts administered the horizontal gaze nystagmus (HGN) test on Rodriguez and observed all six of the possible clues for intoxication. Rodriguez refused to participate in any other field sobriety tests and was placed under arrest for suspicion of DWI. According to protocol, Officer Roberts handcuffed Rodriguez's hands together at the back and placed him in the backseat of Officer Pitts's patrol car.

When they arrived at the police station, Officer Pitts attempted to escort Rodriguez from the patrol car into the station by holding onto Rodriguez's arm. Rodriguez told Officer Pitts, "Don't touch me. I can do this" and pulled away from Officer Pitts's grasp. Rodriguez then lost his balance and fell face forward onto the concrete. He remained on the ground, bleeding heavily from his face, head, and nose. Officer Pitts immediately called for an ambulance. Paramedics with the Houston Fire Department arrived and transported Rodriguez to a nearby hospital.

Officer Roberts followed the ambulance to the hospital emergency room, where he read Rodriguez his statutory warnings and asked him for a blood specimen. Rodriguez refused to provide one. Officer Roberts asked the attending nurse whether he would be drawing Rodriguez's blood for medical purposes. The

nurse responded that he would. Roberts asked the nurse to use Betadine instead of alcohol to disinfect the site of the blood draw, which the nurse did.

Officer Roberts submitted his "DWI case report" to an HPD civilian evidence technician, who in turn contacted a paralegal in the Harris County District Attorney's Office to have a grand jury subpoena issued for Rodriguez's medical records and blood-test results. The day after the incident, the District Attorney's Office issued a grand jury subpoena to the hospital's custodian of records seeking Rodriguez's medical records. The hospital's records custodian responded by providing a copy of them. The records revealed that the blood-alcohol concentration in the sample drawn from Rodriguez at 4:21 A.M. was .209.

Officer Roberts included the blood-alcohol concentration data in his probable cause affidavit and contacted the District Attorney's Office intake division about filing a DWI charge against Rodriguez. The District Attorney's Office filed an information charging Rodriguez with DWI on December 16, 2010. No grand jury was in session when the subpoena issued and no grand jury deliberated whether to bring charges against Rodriguez.

The trial court made the findings of fact and conclusions of law supporting the denial of Rodriguez's motion to suppress, including:

- Office Roberts had reasonable articulable suspicion to detain Rodriguez and had probable cause to arrest him for DWI;

- Rodriguez's blood was drawn and tested solely for the purpose of medical treatment.

- The Fourth Amendment of the United States Constitution does not provide a reasonable expectation of privacy in blood-alcohol test results acquired through tests performed by hospital personnel on samples or specimens of blood drawn solely for medical purposes after a traffic accident.

- The same privacy concerns related to obtaining medical records in *Hardy*[1] apply in this case, where medical personnel drew Rodriguez's blood for the purpose of medical treatment following an accident in the course of a DWI investigation.

- Rodriguez did not have a reasonable expectation of privacy in the results of the blood-alcohol test administered on the sample of Rodriguez's blood that was drawn by hospital personnel for a legitimate medical purpose.

- Because Rodriguez did not have a reasonable expectation of privacy in his medical records obtained by grand jury subpoena process following an accident, Rodriguez lacks standing under federal or state law to contest the process by which the records were acquired.

**Discussion**

**I.    Standard of review**

We review a trial court's ruling on a motion to suppress under a bifurcated standard.  *See Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005).  The trial court is the sole trier of fact and judge of the weight and credibility of the evidence and testimony.  *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007).  Accordingly, we defer to the trial court's determination of historical facts if

---

[1]     *State v. Hardy*, 963 S.W.2d 516 (Tex. Crim. App. 1997).

5

the record supports them. *Ford*, 158 S.W.3d at 493. We review de novo the trial court's application of the law to those facts. *Id.* "[T]he prevailing party is entitled to 'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.'" *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011) (quoting *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)). A trial court's ruling will be sustained if it is "reasonably supported by the record and correct on any theory of law applicable to the case." *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003) (citing *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002)).

## II. Reasonable Expectation of Privacy

Rodriguez claims that the denial of his motion to suppress violates his privacy rights under the Fourth Amendment, the federal Health Insurance Portability and Accountability Act of 1996 (HIPAA), and the Texas Medical Practices Act. He also complains that the State failed to comply with the grand jury procedures set forth in Chapter 20 of the Texas Code of Criminal Procedure. These violations of state and federal law, Rodriguez contends, require suppression pursuant to article 38.23(a) of the Code of Criminal Procedure, which declares that "[n]o evidence obtained by an officer or other person in violation of [any state or federal law] shall be admitted in evidence against the accused." TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005).

The trial court concluded that Rodriguez lacked standing under any of the state or federal laws he invokes because he had no reasonable expectation of privacy in his blood-test results or medical records. Our primary consideration, therefore, is whether the trial court correctly concluded that none of those laws affords Rodriguez a reasonable expectation of privacy in his blood-test results, which were performed for medical purposes and obtained by the State for Rodriguez's prosecution.

## A. *State v. Hardy* **and the Fourth Amendment**

The trial court relied on the Court of Criminal Appeals' decision in *State v. Hardy*, 963 S.W.2d 516 (Tex. Crim. App. 1997), to hold that Rodriguez lacked a reasonable expectation of privacy in protecting his blood-test results from disclosure to the District Attorney's Office. In *Hardy*, the Court of Criminal Appeals specifically held that the Fourth Amendment does not support a reasonable expectation of privacy protecting blood-test results from tests taken by hospital personnel solely for medical purposes after a traffic accident. *Id.* at 527.

The Fourth Amendment protects an individual from the government's search or seizure of a place or thing and from the government's physical intrusion into a place or thing if the individual has a reasonable expectation of privacy in the place searched or item seized. *See* U.S. CONST. amend. IV; *United States v. Jones*, ___ U.S. ___, 132 S. Ct. 945, 950–51 (2012); *Rakas v. Illinois*, 439 U.S. 128, 143, 99

7

S. Ct. 421, 430 (1978). A legitimate expectation of privacy exists when the individual seeking Fourth Amendment protection maintains a "subjective expectation of privacy" in the area searched "that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 31–33, 121 S. Ct. 2038, 2041–42 (2001).

A defendant has standing to challenge the admission of evidence obtained by an unreasonable search or seizure if he proves that he "had a legitimate expectation of privacy. . . ." *State v. Betts*, 397 S.W.3d 198, 203 (Tex. Crim. App. 2013); *Rakas*, 439 U.S. at 143, 99 S. Ct. at 430; *Castleberry v. State*, 425 S.W.3d 332, 334 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). The trial court found that Rodriguez had a subjective expectation of privacy in his medical records, but Rodriguez had the further burden to prove that society recognizes his subjective expectation as objectively reasonable. *See Betts*, 397 S.W.3d at 203. The trial court concluded that Rodriguez did not meet this further burden.

We agree with the trial court. Rodriguez contends that circumstances surrounding his blood draw differ materially from those in *Hardy.* Together with changes in the legal landscape since *Hardy*, these differences, he contends, support recognition of a privacy right in his blood-test results. He argues that "*Hardy* answered only the very narrow Fourth Amendment expectation of privacy in blood-test reports when blood is drawn for medical purposes following a traffic

8

accident," and not whether article 38.23 would require exclusion of evidence obtained in violation of state or federal law, or whether a reasonable expectation of privacy exists with respect to medical records generally. We examine both the factual and legal distinctions in turn.

Factually, Rodriguez distinguishes *Hardy* by pointing out that the blood test in that case took place after a traffic accident, whereas his did not. Our court did not find this to be a meaningful distinction in Fourth Amendment terms in *Owens v. State*, 417 S.W.3d 115 (Tex. App.—Houston [1st Dist.] 2013, no pet.). In that case, the defendant suffered an asthma attack shortly after his arrest. *Id.* at 116. The officer called an ambulance. *Id.* At the emergency room, the defendant presented with shortness of breath, and his blood pressure and heart rate were elevated. *Id.* Over the defendant's objection, the treating physician ordered a blood draw to rule out the possibility of other life-threatening conditions, such as a heart attack. *Id.* We held that the evidence supported a reasonable conclusion that the hospital staff acted out of medical necessity in drawing his blood and, as a result, article 38.23(a) did not bar the admission of his blood-test results that were eventually obtained via a grand jury subpoena. *Id.* at 118.

The undisputed evidence in this case demonstrates that hospital staff drew and tested Rodriguez's blood for medical purposes. Officer Roberts listed Rodriguez's fall in the parking lot, which caused his injury, as one of the facts

9

supporting his opinion that Rodriguez was intoxicated on September 25, 2010. Rodriguez does not identify any policy reason to support his proposed exception for the case in which a hospital patient was treated for injuries received in an accidental fall as opposed to injuries received in a traffic accident, and we have found none. *See Owens*, 417 S.W.3d at 116.

Legally, according to Rodriguez, *Ferguson v. City of Charleston*, 532 U.S. 67, 121 S. Ct. 1281 (2001), recognizes a reasonable expectation of privacy for "those who undergo diagnostic tests in hospitals that—absent other considerations not present here (like a legal duty to disclose)—the results of their tests will not be shared with non-medical third parties." We do not read *Ferguson* so broadly. There, the public hospital performed diagnostic tests at the State's behest to obtain evidence of a patient's criminal conduct for law-enforcement purposes without first obtaining the patient's consent. *See id.* at 84–85, 121 S. Ct. at 1291–92. Here, the blood draw and blood-alcohol content test results were performed for medical treatment. This distinction renders *Ferguson* inapposite. *See Murray v. State*, 245 S.W.3d 37, 42 (Tex. App.—Austin 2007, pet. ref'd); *see also State v. Villarreal*, No. PD-0306-14, 2014 WL 6734178, at *15 (Tex. Crim. App. 2014) (explaining that drug-testing policy was invalidated in *Ferguson* because immediate objective of searches was to generate evidence for law enforcement purposes); *Garcia v. State*, 95 S.W.3d 522, 526–27 n.1 (Tex. App.—Houston [1st Dist.] 2002, no pet.)

(following *Hardy* post-*Ferguson* and applying *Hardy* to appellant's challenge under Texas Constitution). *Ferguson* does not support Rodriguez's contention that the Fourth Amendment protects his expectation of privacy in the medical records containing the blood-test results.

## B. Texas Medical Practices Act

The Texas Medical Practice Act (MPA) protects "record[s] of the identity, diagnosis, evaluation, or treatment of a patient by a physician that is created or maintained by a physician is confidential and privileged and may not be disclosed except as provided." TEX. OCC. CODE ANN. § 159.002(b) (West 2012). When the Court of Criminal Appeals adopted the Texas Rules of Evidence in 1985, it repealed the confidentiality provision of the MPA's precursor in Rule 509, which abrogates the physician-patient privilege in criminal cases. *See Hardy*, 963 S.W.2d at 519–23 (citing TEX. R. CRIM. EVID. 509 ("There is no physician-patient privilege in criminal proceedings.") (now TEX. R. EVID. 509(b))).

The Legislature later re-enacted the MPA without reference to Rule of Evidence 509. Rodriguez contends that the MPA's re-enactment means that, despite Rule 509, he retains a limited privilege and confidentiality in his medical records with respect to their discovery in criminal proceedings.

We disagree. The MPA excepts from its general rule of physician-patient confidentiality "any criminal prosecution where the patient is a victim, witness or

11

defendant" and for response to "a court or a party to an action under a court order or subpoena." TEX. OCC. CODE ANN. § 159.003(a)(10), (12) (West 2012). Rodriguez points to section 159.003(b) of the Occupations Code, which provides: "This section does not authorize the release of confidential information to investigate or substantiate criminal charges against a patient." *Id.* § 159.003(b). Like the rest of the chapter, this provision is directed at the physician's authority or lack thereof to disclose a patient's records; it does not limit the State's access to those records through subpoena. *See id.* § 159.003(a)(10), (12), *see also id.* § 159.004(1) (West 2012) (excepting to privilege of confidentiality in allowing for disclosure of medical records in situation other than court or administrative proceeding to "a governmental agency, if the disclosure is required or authorized by law"). Under the circumstances here, the MPA does not provide any basis for protecting Rodriguez's medical records or blood-test results from disclosure pursuant to subpoena and, as a result, it does not provide Rodriguez with grounds to assert a reasonable expectation of privacy.

**C. Grand jury statute**

Rodriguez further contends that the State procured his medical records in violation of the Texas grand jury statute because the assistant district attorney improperly delegated her authority to issue a subpoena. *See* TEX. CODE CRIM. PROC. ANN. arts. 20.02–20.05, 20.13 (West 2015). The attorney stipulated that she

routinely delegated the issuance of a subpoena to a member of her clerical staff, who, acting under the attorney's authority, signed the subpoena in the attorney's name with an ink stamp. Rodriguez also observes that the hospital provided the records directly to the investigating officer and that the grand jury was not in session when the district attorney's office issued the subpoena. But Rodriguez has not shown that he was personally aggrieved by any deviation from the regular grand jury subpoena procedure, and the hospital did not challenge the subpoena; it simply turned over the records.

During oral argument, Hernandez relied on *Boyle v. State*, which involved a challenge to the validity of law enforcement's use of a grand jury material witness attachment, to take Boyle, a truck driver, into custody. 820 S.W.2d 122 (Tex. Crim. App. 1989), *overruled on other grounds by Gordon v. State*, 801 S.W.2d 899 (Tex. Crim. App. 1990). The police officers investigating the homicide honed in on Boyle as a suspect, but admittedly "lacked sufficient probable cause to conduct an investigatory search or to procure the issuance of an arrest warrant" for him. *Id.* at 125, 129. The officers nonetheless acquired a grand jury material witness attachment, signed by a district judge, to arrest Boyle and take him into custody. *Id.* at 125–26. The officers read Boyle his *Miranda* warnings, interrogated him, and asked for consent to search his truck, which he gave. *Id.* at 126. An arrest

warrant charging Boyle with capital murder was issued a short time after the officers completed the investigatory search of the truck. *Id.*

Boyle moved to suppress the evidence procured during the interrogation and search, contending that the officers used his arrest pursuant to the material witness attachment to gain his permission to search the truck when they could not have done so by following procedures consistent with his rights under the federal and state constitutions. *Id.* at 127. The Court of Criminal Appeals examined the district attorney's affidavit supporting the attachment and concluded that it did not comply with the Code of Criminal Procedure's requirements for its issuance.[2] *Id.* at 129. The Court held that "the procedure utilized in placing the appellant under arrest . . . was a pretext, subterfuge, and deceptive artifice intentionally employed to circumvent the principles and tenets of the Fourth and Fourteenth Amendments to the United States Constitution and Art. I, Sec. 9 of the Texas Constitution," making his arrest illegal. *Id.* at 129–30. But for the trucking company's independent consent to search the truck Boyle was driving, which the State first argued on rehearing, the admission of evidence seized during the truck's search would have amounted to harmful constitutional error. *Id.* at 136–37, 143.

---

[2] Defects in process included: the violation of a provision restricting issuance to county residents, which Boyle was not; the absence of a required sworn statement that the district attorney believed that the witness was about to move out of the county; an affidavit that set bond without statutory authorization; and no showing that the witness failed to obey a properly served subpoena before the attachment was issued. *Boyle v. State*, 820 S.W.2d 122, 128–29 (Tex. Crim. App. 1989).

14

The main distinction that renders *Boyle* inapposite is the admitted lack of probable cause when the attachment issued in *Boyle* and the admitted existence of probable cause when the subpoena issued in this case. Rodriguez has not suggested that the police could not have obtained the medical records other than by violating the grand jury subpoena process.

We consistently have held that, because a defendant does not have any constitutional or statutory reasonable expectation of privacy in blood-test results obtained for medical purposes while the defendant is under criminal investigation for DWI, he does not have standing to complain of any defects in the grand jury subpoena process. *Kirsch v. State*, 276 S.W.3d 579, 587 (Tex. App.—Houston [1st Dist.] 2008), *aff'd on other grounds*, 306 S.W.3d 738, 749 (Tex. Crim. App. 2010); *Garcia v. State*, 95 S.W.3d 522, 526–27 (Tex. App.—Houston [1st Dist.] 2002, no pet); *Dickerson v. State*, 965 S.W.2d 30, 31 (Tex. App.—Houston [1st Dist.] 1993), *pet. dism'd, improvidently granted*, 986 S.W.2d 618 (Tex. Crim. App. 1999); *accord Tapp v. State*, 108 S.W.3d 459, 461 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). We thus reject his challenge to the admissibility of the blood-test results based on any procedural irregularity in the grand jury process.

**D. HIPAA**

Finally, Rodriguez contends that his blood-test results should have been suppressed because the grand jury subpoena did not comply with the statutory

15

requirements for its issuance, and accordingly, the release in response to the subpoena violated HIPAA. In *Kirsch*, we agreed with other Texas courts of appeals that HIPAA does not protect from disclosure a patient's medical records and blood-test results obtained through lawful process and under circumstances that suggest the patient has committed the offense of DWI. 276 S.W.3d at 586–87 (citing *Kennemur v. State*, 280 S.W.3d 305, 312 (Tex. App.—Amarillo 2008, pet. ref'd), and *Murray v. State*, 245 S.W.3d 37, 42 (Tex. App.—Austin 2007, pet. ref'd)).

Rodriguez relies on the following HIPAA regulation:

(f)     Standard: Disclosures for law enforcement purposes. A covered entity may disclose protected health information for a law enforcement purpose to a law enforcement official if the conditions in paragraphs (f)(1) through (f)(6) of this section are met, as applicable.

     (1)     Permitted disclosures: Pursuant to process and as otherwise required by law. A covered entity may disclose protected health information:

         (i)     As required by law including laws that require the reporting of certain types of wounds or other physical injuries, except for laws subject to paragraph (b)(1)(ii) or (c)(1)(i) of this section; or

         (ii)     In compliance with and as limited by the relevant requirements of:

             (A)     A court order or court-ordered warrant, or a subpoena or summons issued by a judicial officer;

             (B)     A grand jury subpoena; or

> (C) An administrative request, including an administrative subpoena or summons, a civil or an authorized investigative demand, or similar process authorized under law, provided that:
>
> (1) The information sought is relevant and material to a legitimate law enforcement inquiry;
>
> (2) The request is specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought; and
>
> (3) De-identified information could not reasonably be used.

45 C.F.R. § 164.512(f). Specifically, Rodriguez claims that the subpoena failed to comply with the statutory requirements for its issuance and thus violates subsection (f)(ii)(B).

Any irregularity in the subpoena's issuance in this case does not support suppression of the blood-test results. When the Department of Health and Human Services (DHHS) promulgated the HIPAA regulations, it declared: "We shape the rule's provisions with respect to law enforcement according to the limited scope of our regulatory authority under HIPAA, which applies only to the covered entities and not to law enforcement officials." 65 Fed. Reg. 82462, 82679 (Dec. 28, 2000) (agency's response to public comments in connection with promulgation of final rule). HIPAA defines as "covered entities" health plans, health care clearinghouses, and health care providers who transmit health information

17

electronically. *See* 45 C.F.R. §§ 160.102(a), 164.104(a). An individual who believes his rights under HIPAA have been violated may file a complaint against a covered entity with DHHS's Office of Civil Rights. 45 C.F.R. § 160.306; *see* 42 U.S.C. §§ 1320d-5, 1320d-6 (providing for imposition of monetary fines on a covered entity in the event of a violation). But, as DHHS recognized, "under the HIPAA statutory authority, [DHHS] cannot impose sanctions on law enforcement officials or require suppression of evidence." 65 Fed. Reg. at 82679.

The State did not violate HIPAA because it is not a covered entity under HIPAA and accordingly, its conduct is not governed by HIPAA. *See United States v. Elliott*, 676 F. Supp. 2d 431, 440 (D. Md. 2009). Moreover, even if the State had violated HIPAA standards, we cannot read the exclusionary rule into a statute when its remedial provision is silent on suppression. *See, e.g.*, *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 346, 126 S. Ct. 2669, 2679 (2006) (suppression is not proper remedy for violation of Article 36 of the Vienna Convention; reading rule requiring suppression into Convention would supplement terms and enlarge U.S. obligations, which would be "entirely inconsistent with the judicial function"); *Transam. Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19, 100 S. Ct. 242, 247 (1979) (declaring that "it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it"). "HIPAA was passed to ensure an individual's right to

18

privacy over medical records; it was not intended to be a means for evading prosecution in criminal proceedings." *United States v. Zamora*, 408 F. Supp. 2d 295, 298 (S.D. Tex. 2006); *accord Elliott*, 676 F. Supp. 2d at 437–38 (denying motion to suppress on basis that government's interest in obtaining medical records with blood-test results and in addressing drunk-driving problem outweighed any privacy interest violated through use of improper subpoena).

We abide by *Kirsch* and hold that that HIPAA does not provide Rodriguez with a reasonable expectation of privacy in his medical records and blood-test results in connection with medical treatment for injuries sustained while in custody under suspicion of intoxication. *See* 276 S.W.3d at 587. As a result, the trial court did not err in denying Rodriguez's motion to suppress on this ground.

## III. Article 38.23 Standing

Article 38.23 provides that "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX. CODE CRIM. PROC. ANN. art. 38.23. Its purpose is "to protect a suspect's privacy, property, and liberty rights against overzealous law enforcement . . . [and] to deter unlawful actions which violate the rights of criminal suspects in the acquisition of

evidence for prosecution." *Wilson v. State*, 311 S.W.3d 452, 458–59 (Tex. Crim. App. 2010).

We have held that none of the laws that Rodriguez relies on supports his claim to a reasonable expectation of privacy in these circumstances, and he does not identify any other personal right that the State violated in obtaining the records. An accused does not have standing to complain about evidence that is illegally obtained unless it was done so in violation of his rights. *See Chavez v. State*, 9 S.W.3d 817, 819 (Tex. Crim. App. 2000). Absent a substantive personal right, Rodriguez is not entitled to exclusion of the evidence under article 38.23.

**Conclusion**

We hold that the trial court did not err in denying Rodriguez's motion to suppress. We therefore affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Massengale.

Publish. TEX. R. APP. P. 47.2(b).