*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JERRY GALLUP,

        Plaintiff-Appellant,

v

SERGEANT OLIVIA MOSS-FORT,

        Defendant-Appellee,

and

BEAUMONT HOSPITAL-WAYNE,

        Defendant.

UNPUBLISHED
January 27, 2025
2:16 PM

No. 363306
Wayne Circuit Court
LC No. 19-009274-NO

Before: RIORDAN, P.J., and RICK and N. P. HOOD, JJ.

PER CURIAM.

Plaintiff Jerry Gallup appeals as of right the trial court's judgment of no cause for action against defendant Sergeant Olivia Moss-Fort, Judge John H. Gillis, Jr., presiding.[1] On appeal, plaintiff raises seven claims of error regarding procedural and evidentiary issues in the jury trial. We affirm.

## I. FACTS

On July 8, 2019, plaintiff filed his complaint against defendant, alleging that on or about June 23, 2018, he was admitted to Beaumont in Wayne, Michigan, for a thumb infection. Plaintiff alleged that defendant, a security officer employed by Beaumont, entered his bedroom and accused his girlfriend of smoking in the hospital.[2] According to plaintiff, the verbal confrontation

---

[1] Beaumont Hospital-Wayne also was identified as a defendant, but it was dismissed before trial. We will hereinafter refer to Sergeant Olivia Moss-Fort as the singular "defendant."

[2] Plaintiff and his then-girlfriend at the time of the incident at issue married before trial.

-1-

escalated, so he began recording the event with his cellular phone. Plaintiff contended that defendant then violently removed his phone, which was connected to his finger with a "locking mechanism," from his hand, and deleted the video. In relevant part, plaintiff sought damages for "physical pain and suffering including severe pain to his shoulder and thumb," as well as "severe and permanent feelings of fear, anger, embarrassment and guilt." Specifically, plaintiff maintained claims against defendant for (1) assault, (2) battery, and (3) intentional infliction of emotional distress. Plaintiff alleged counts for negligent hiring, training, and supervision; and negligence against Beaumont.

On July 20, 2021, defendant and Beaumont moved for summary disposition of the fourth and fifth counts of the complaint under MCR 2.116(C)(8) and (C)(10). In the accompanying brief, defendant and Beaumont summarized the altercation as follows:

> When Sergeant Moss-Fort and Sergeant Crawford entered the room, Plaintiff was initially in the restroom. Sergeant Moss-Fort told Ms. Gallup she could not smoke in the hospital. Initially, Ms. Gallup denied the allegations and confirmed that she always leaves the premises to smoke. When Plaintiff returned from the restroom, he and Ms. Gallup became aggressive and confrontational, at which time they wanted to know which other patients were being asked about smoking.

> During the entire conversation, Sergeant Moss-Fort remained calm, never raised her voice, and never used profane language. Sergeant Moss-Fort and Sergeant Crawford believed the matter resolved and turned to leave the room. Believing the matter was over, Sergeant Moss-Fort shut off her body camera. Luckily, Officer Crawford kept his on. At that point, Plaintiff vocalized that he recorded the incident, which violates the privacy rights of other patients at the hospital. Due to those privacy rights, like HIPAA, patients are barred from recording on hospital premises, except for extremely limited circumstances; circumstances in which privacy rights can be protected. As such, Sergeant Moss-Fort told him he needed to delete the recording. When he would not, she took his phone to ensure its deletion. At this point, Plaintiff became irate and demanded to leave the hospital. Sergeant Crawford's body camera footage shows that Sergeant Moss-Fort did not do anything wrong during the confrontation. She calmly addressed Ms. Gallup regarding the smoking. She remained calm when Plaintiff became agitated. She never raised her voice or changed her demeanor. She acted appropriately to protect the rights of the other patients at the hospital.

Defendant and Beaumont argued that summary disposition was warranted as to the fourth count because there was nothing in her employment history to suggest that she would engage in assaultive conduct, and summary disposition was warranted as to the fifth count because her conduct was unforeseeable from the perspective of Beaumont. Defendant and Beaumont stated that "she has never exhibited any conduct other than that associated with a successful 27 years on the City of Detroit Police Department."

On September 23, 2021, the trial court granted the motion and dismissed the fourth and fifth counts of the complaint, which resulted in dismissal of Beaumont from the case itself.[3]

Numerous matters were litigated before trial. For the purposes of this appeal, the following issues are relevant.[4] First, on July 28, 2021, defendant filed a motion in limine to exclude plaintiff from referencing civil litigation filed by Scott Bowman against her in 2015. In that case, defendant, while employed as a sergeant at Wayne County Community College,[5] was involved in a July 2013 altercation with Bowman on campus. When defendant tried to escort Bowman off campus, Bowman resisted and was taken into custody. Bowman ultimately received a trespass conviction. He sued defendant, other individuals, and Wayne County Community College in 2015, claiming excessive force and other related allegations. The Wayne Circuit Court dismissed the case on the basis of governmental immunity and the fact that there was probable cause for his arrest.

Defendant, in the brief accompanying her motion in limine, asserted that "Mr. Boman's [sic] baseless allegations against Sergeant Moss-Fort have no bearing on the determination of whether she assaulted and battered [plaintiff] in 2018. As such, any reference to the previous civil litigation and Mr. Boman's [sic] testimony at trial are completely irrelevant."

Plaintiff responded that defendant, in her deposition in this case, stated that she did not have any knowledge of the 2015 Bowman lawsuit. According to plaintiff, because defendant was named in her individual capacity in the 2015 Bowman lawsuit, it necessarily follows that "Defendant lied under oath [during her deposition] and this testimony should at the very least come in so the jury can assess her credibility." On February 8, 2022, the trial court entered an order granting the motion "for the reasons stated on the record."[6]

Second, on April 22, 2022, plaintiff filed a motion for leave to file an amended complaint under MCR 2.118. In the motion, plaintiff observed that he recently received Beaumont's written policy regarding video recordings. That policy stated, in relevant part:

> iii.   Patients and visitors may not record Beaumont Health's Workforce Members, equipment, facilities or treatment encounters.
>
> * * *
>
> vii.   Workforce Members are authorized to question, stop and determine the status of any recording. Workforce Members have the authority to ask the patient

---

[3] The register of actions indicates that the matter was discussed at a September 20, 2021 motion hearing. However, the transcript of that hearing was not provided to this Court.

[4] Additional facts will be provided when analyzing the issues.

[5] Defendant also worked for the Detroit Police Department at the time.

[6] The register of actions indicates that the matter was discussed at an October 4, 2021 motion hearing. However, the transcript of that hearing was not provided to this Court.

or visitor to stop recording and dispose/delete the recording if deemed inappropriate.

> viii. Workforce Members should notify Security if any patient or visitor refuses to stop recording or disposes of/deletes a recording.

According to plaintiff, the policy "establishes Defendant Olivia Fort's conduct *was for the purpose of serving the employer (Beaumont) and that the conduct was foreseeable.*" (Emphasis in original.) Plaintiff thus asked the trial court to allow him "to Amend the Complaint against Beaumont to include negligence."

In response, defendant observed that she was deposed on December 5, 2019, during which she acknowledged that Beaumont had a written policy essentially providing that "there is no recording on the premises or photographs on the premises." Defendant argued that "[t]he information relied on by Plaintiff's counsel has been within their knowledge since then and has already been considered by the Court. As such, Plaintiff has established undue delay precluding their request to amend." Defendant also observed that the fourth and fifth counts of the original complaint against Beaumont had been dismissed with prejudice, so the instant motion should be treated as a motion for reconsideration of the earlier order granting Beaumont summary disposition, not as a motion to amend.

On June 3, 2022, the trial court denied the motion without oral argument and without explanation.

Third, on August 26, 2022, plaintiff filed a motion in limine asking, in relevant part, that the trial court preclude defendant from arguing that she was authorized by the Health Insurance Portability and Accountability Act (HIPAA), 42 USC 1320d *et seq.*, to engage in the contested conduct. According to plaintiff, "the incident at bar occurred within the confines of Plaintiff's private patient room, where there were no other patients present whatsoever. Ergo, any evidence or speculation concerning HIPAA is irrelevant to the action and should not be argued to the Jury." Plaintiff alternatively asked the trial court to "allow a special requested jury instruction informing the Jury that HIPAA does not apply to this action . . . ." On September 2, 2022, the trial court entered an order providing that "Plaintiff's Motion to Exclude Reference to HIPAA shall be addressed by the parties by way of [a] mutually drafted jury instruction . . . ."

Trial occurred over six days between August 30 and September 8, 2022. Plaintiff testified that the incident in question terrified him to the point where "I don't want to go out of the house no more," and "I have constant dreams about this incident." Plaintiff said that he did not give defendant consent to take his cellular phone, and that when she removed the phone from his hand, "[i]t felt like a rip and a tear" that injured his shoulder, arm, and hand.

On cross examination, plaintiff acknowledged that the complaint and his deposition contained factually incorrect statements. For example, the complaint essentially alleged that defendant "ran across the room and leapt into [his] bed," but the body camera of Sergeant Crawford, who accompanied defendant, did not show any conduct by defendant remotely

resembling this allegation.[7]  As another example, plaintiff essentially testified in his deposition that defendant removed his cellular phone from his hand with "a military style twist with three yanks," but again, the body camera video did not show such conduct by defendant.  As yet another example, plaintiff essentially testified in his deposition that defendant "became a raging killing machine, on a scale of 1 to 10, she was like a 20."  When defense counsel asked plaintiff whether the video supported his statement, plaintiff replied that "the way that the video showed it, that's, it didn't happen to me like that, okay."

Also on cross examination, plaintiff acknowledged that he did not stop recording the incident with his cellular phone despite the fact that defendant and Sergeant Crawford told him that recording was not allowed, but he did not have an explanation for his conduct in this regard.  Plaintiff acknowledged that defendant asked to "see" his phone before she removed it from his hand, but he did not surrender his phone to defendant because he assumed that she intended to search his personal information.  Further, plaintiff acknowledged, over objection from his counsel to the question, that no criminal charges resulted from the incident despite the fact that he made a police report.[8]  Finally, plaintiff agreed that he used medical marijuana for depression since about 2010, in addition to other medications such as Norco.

Defendant, on direct testimony, stated that she entered the hospital room occupied by plaintiff and his wife to inform his wife that "[i]f she's caught smoking in the hospital she would be asked to leave."[9]  Defendant testified that she "thought" she had the right to remove plaintiff's cellular phone from his hand to delete his video recording because "there's no recording inside the hospital anywhere."[10]  When asked by plaintiff's counsel whether she was "relying on any particular policy at Beaumont to take that phone," defendant replied that "they have signs posted that there's no videotaping or photography in the hospital."  Defendant added that "I was to protect the rights of the patients and safety of the staff."  Defendant acknowledged that her own body

---

[7] The body camera video was admitted as Trial Exhibit 16 and was repeatedly referenced throughout trial, particularly by defendant.  According to defendant on appeal, "the video demonstrates that Appellant's entire claim was fabricated."  We have reviewed the 3:25 video and agree that it does not show defendant acting in a violent or unreasonably aggressive manner, or in any way remotely consistent with plaintiff's allegations.

[8] According to plaintiff's counsel during the objection, "[w]e had a motion hearing where we had a conversation with this, the lack of criminal charges or criminal charges in this case or convictions in this case are completely different standards, as a result of that you indicated that unless I opened the door to it we weren't gonna get into it."  We cannot identify a transcript in the record verifying this statement, but it was unopposed by the trial court and defense counsel at the time, so we reasonably may assume that it is accurate.

[9] Defendant explained that "[a]s I walked into the room there was a strong smell of smoke in the room, and the information that I had prior to going inside the room was that the visitor for that room was the one possibly smoking."

[10] Limited recording is allowed in the maternity ward.

-5-

camera was turned off when she removed the phone from plaintiff's hand, as she mistakenly did not turn it on beforehand.

Defendant testified that the police appeared at the hospital to investigate the incident, that she was unaware whether the police knew that she was a former Detroit police officer during that investigation, and that the police viewed the body camera video of Sergeant Crawford. During this line of questioning, plaintiff's counsel complained that he did not receive that video sufficiently early in the litigation:

> Q: Okay, so let me see if I understand this. The video that my clients weren't able to see prior to their deposition a year later, the police officers were able to look at right then, is that fair?
>
> A: I can answer yes, the police seen the video. I don't know –

On examination by defense counsel, defendant testified that patients and visitors are not allowed to record inside the hospital because "they would videotape or take pictures of people that are there in the hospital to be treated. Also we [sic] threats and things to the medical staff, so all that for the safety of the staff as well as patients is our concerned [sic]." When defense counsel reviewed the body camera video with defendant, defendant testified that she was able to remove the cellular phone "straight out" because it was not attached to a ring socket on plaintiff's finger, that she did not believe that she applied sufficient force to injure plaintiff, and that she deleted the video recording by plaintiff without looking at any other material on his phone.

The following day of trial, plaintiff briefly presented testimony from his son, as well as the de bene esse depositions of Dr. Saad and Dr. Cerrone. Then, plaintiff's counsel informed the trial court that it was not going to present the de bene esse deposition of Dr. Grias because "it's cumulative, her records are already in evidence."[11] Plaintiff's counsel added that defendant could not rely on the de bene esse deposition of a witness identified as testifying on behalf of an opposing party, at least where defendant "did not file a notice of reliance on that de bene esse dep." Defense counsel replied that Dr. Grias was on the respective witness lists of both plaintiff and defendant, so he had a right to present her deposition. The trial court ruled that defendant could present Dr. Grias's deposition.

Plaintiff's wife testified that defendant seriously injured his hand and that he suffered ongoing emotional distress from the incident. On cross examination, defense counsel elicited testimony indicating that she stated at her deposition that defendant jumped on plaintiff and that plaintiff started screaming, "help me." Plaintiff's wife acknowledged that the body camera video

---

[11] The transcript refers to "Dr. Rice," but that appears to be a spoken or typographical error, as the context indicates that plaintiff's counsel intended to refer to Dr. Grias.

did not show the occurrence of such events. Additionally, she acknowledged that plaintiff used about "five doobies" or "an eighth" of marijuana on a daily basis to assist with sleeping.[12]

At the close of proofs the following day, plaintiff moved for a directed verdict on the battery claim, the fact that he sustained an injury, and the intentional inflectional of emotional distress claim. The trial court denied the motion. Ultimately, the jury returned a verdict in favor of defendant on all three counts after about 30 minutes of deliberation.

This appeal followed.

## II. AMENDED COMPLAINT

Plaintiff argues that the trial court erred by denying his motion to amend his complaint to add an allegation supporting his dismissed claim for negligent hiring, training, and supervision against Beaumont. Specifically, plaintiff argues that he should have been allowed to amend his complaint to include a factual allegation that Beaumont had a written policy generally prohibiting video recording by patients and visitors. Plaintiff states, without elaboration, that "the amendments would have explicitly added additional factual allegations not made out in the original complaint to correct any potential defects in the original pleadings." We disagree.

"This Court reviews a trial court's decision to permit a party to amend its pleadings for an abuse of discretion." *In re Kostin Estate*, 278 Mich App 47, 51; 748 NW2d 583 (2008). "[A]n abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*.

Generally, "a party may amend a pleading only by leave of the court or by written consent of the adverse party. Leave shall be freely given when justice so requires." MCR 2.118(A)(2). "If the trial court grants a party's motion for summary disposition under MCR 2.116(C)(8), (9), or (10), the trial court shall give the parties an opportunity to amend the pleadings 'unless the evidence then before the court shows that amendment would not be justified.' " *Zwiker v Lake Superior State Univ*, 340 Mich App 448, 484; 986 NW2d 427 (2022), quoting MCR 2.116(I)(5). "The trial court need not give a party an opportunity to amend a pleading if the amendment would be futile." *Zwiker*, 340 Mich App at 484. "An amendment is futile where, ignoring the substantive merits of the claim, it is legally insufficient on its face." *Id*. (quotation marks and citation omitted). "A proposed amendment is also futile if summary disposition would be appropriately granted regarding the new claims, either when a party has not established a genuine issue of material fact regarding an element, or when the undisputed facts establish that summary disposition would be appropriate." *Id*. (citations omitted).

---

[12] After the jury was excused for the day, plaintiff's counsel noted for the record that he objected to admission of testimony that plaintiff used medical marijuana, but the trial court stated that "it's a fact that people use marijuana and they're [sic] derivatives for pain, medical agents, et cetera." Also, the trial court stated that it would give the jury the HIPAA instruction prepared by defendant, not plaintiff.

-7-

"[T]he gravamen of negligent hiring or retention is that the employer bears some responsibility for bringing an employee into contact with a member of the public despite knowledge that doing so was likely to end poorly." *Mueller v Brannigan Brothers Restaurants & Taverns LLC*, 323 Mich App 566, 574; 918 NW2d 545 (2018). "[A] claim of negligent hiring or retention requires actual or constructive knowledge by the employer that would make the *specific* wrongful conduct perpetrated by an employee predictable." *Id*. at 575. In other words, claims of negligent retention, negligent training, and negligent supervision "depend on the particular misconduct complained of being foreseeable." *Id*. at 577.

Initially, we note that it is difficult to address this issue as framed by plaintiff. Early in the proceedings, the trial court dismissed the fourth and fifth counts of the original complaint against Beaumont, and thus dismissed Beaumont from the case. Thereafter, plaintiff brought allegedly new information to the trial court—in particular, the written policy regarding video recordings. According to plaintiff, this written policy sustains his fourth count. Under these circumstances, plaintiff should have filed a motion for reconsideration, which applies when new information is discovered after summary disposition has been granted. See *Churchman v Rickerson*, 240 Mich App 223, 233; 611 NW2d 333 (2000); *Am Transmission, Inc v Channel 7 of Detroit, Inc*, 239 Mich App 695, 709-710; 609 NW2d 607 (2000). See also MCR 2.119(F)(3).[13]

In any event, we conclude that the trial court did not abuse its discretion by denying plaintiff's motion to amend his complaint. The trial court had already granted summary disposition in favor of Beaumont with regard to the fourth and fifth counts of the complaint, and plaintiff does not challenge the merits of that ruling. Moreover, it was undisputed at the summary-disposition stage that video recording by patients and visitors was not allowed in the hospital, and that defendant allegedly relied upon this prohibition when taking plaintiff's cellular phone. Indeed, both the brief accompanying the motion for summary disposition and plaintiff's brief in response referenced "policy" and "HIPAA law" prohibiting such recordings. Thus, the fact that plaintiff apparently did not receive a copy of Beaumont's written policy regarding video recordings until after the partial grant of summary disposition is not relevant, and it did not affect the outcome of the proceedings because the trial court and the parties already were aware that such a policy existed, regardless of whether that policy was legal or administrative in nature. Amending the original complaint to expressly reference the written policy would have been futile, so the trial court correctly denied the motion to amend. See *Zwiker*, 340 Mich App at 484.[14]

## III. HIPAA INSTRUCTION

---

[13] Had plaintiff filed a motion for reconsideration, it would have been properly denied by the trial court because defendant already had testified, before the motion for summary disposition was considered and granted, that Beaumont had a written policy against video recordings. Thus, the purportedly new information could have been brought to the attention of the trial court in a timely manner. See *Churchman*, 240 Mich App at 233.

[14] We note that the written policy applies to "Workforce Members" in general, as distinguished from "Security." Presumably, security officers such as defendant have greater leeway to enforce hospital policy than the typical "Workforce Member."

Plaintiff argues that the trial court erred by giving the jury the HIPAA instruction requested by defendant, rather than his requested instruction. We disagree.

"This Court reviews claims of instructional error de novo." *Lewis v LeGrow*, 258 Mich App 175, 211; 670 NW2d 675 (2003). "The trial court's jury instructions must include all the elements of the plaintiffs' claims and should not omit any material issues, defenses, or theories of the parties that the evidence supports." *Id*. "If, on balance, the theories of the parties and the applicable law are adequately and fairly presented to the jury, no error requiring reversal occurs." *Id*.

"The trial court has discretion to give additional instructions not covered by the standard jury instructions as long as they are applicable and accurately state the law and are concise, understandable, conversational, unslanted, and nonargumentative." *Mull v Equitable Life Assurance Soc of United States*, 196 Mich App 411, 422; 493 NW2d 447 (1992). "A supplemental instruction need not be given if it would add nothing to an otherwise balanced and fair jury charge and would not enhance the ability of the jury to decide the case intelligently, fairly, and impartially." *Id*. at 422-423. That is, "[w]hen the standard jury instructions do not adequately cover an area, the trial court is obligated to give additional instructions when requested, if the supplemental instructions properly inform the jury of the applicable law and are supported by the evidence." *Bouverette v Westinghouse Electric Corp*, 245 Mich App 391, 401-402; 628 NW2d 86 (2001). "A trial court's decision regarding supplemental instructions will not be reversed unless failure to vacate the verdict would be inconsistent with substantial justice." *Id*. at 402.

"HIPPA [sic] is the primary federal law which was passed to ensure an individual's right to privacy over medical records." *United States v Elliott*, 676 F Supp 2d 431, 436 (D Maryland, 2009). "It governs the confidentiality of medical records and regulates how and under what circumstances 'covered entities' may use or disclose 'protected health information' about an individual." *Id*. "Generally, HIPPA [sic] prohibits the use and disclosure of an individual's protected health information unless the individual has authorized its use and disclosure." *Id*.

"HIPAA does not create a private right of action." *Mayfield v Presbyterian Hosp Admin*, 772 Fed App'x 680, 686 (CA 10, 2019). "[T]here simply is no private right of action for violations of HIPAA, at the state or federal level." *Brush v Miami Beach Healthcare Grp Ltd*, 238 F Supp 3d 1359, 1367 (SD Fla, 2017) (quotation marks and citation omitted). "HIPAA provides civil and criminal penalties for improper disclosures of medical information, but it does not create a private cause of action, leaving enforcement to the Department of Health and Human Services alone." *Doe v Bd of Trustees of Univ of Illinois*, 429 F Supp 2d 930, 944 (ND Ill, 2006).

In this case, plaintiff requested the following HIPAA instruction:

There is a federal law called the Health Insurance Portability and Accountability Act of 1996 which protects patient health information and is abbreviated as HIPAA. HIPAA regulates Health Providers, Health Plans and Healthcare Clearinghouses to insure the security and privacy of Patient Health Information. HIPAA does not regulate patients and/or patient conduct.

The only enforcement mechanism of HIPAA is the filing of a complaint alleging a violation by a Health Provider, Health Plan and/or Healthcare Clearinghouse in the use of Patient Health Information. The complaints are investigated by The Office for Civil Rights (OCR), an agency within the U. S. Department of Health and Human Services. It does so under its authority to enforce the HIPAA Privacy, Security, and Breach Notification Rules (collectively known as the "HIPAA Rules"), in accordance with the HIPAA Enforcement Rule.

There is no private right of action in the HIPAA law. That means that it cannot be enforced by an patient against a Health Provider, Health Plan and/or Healthcare Clearinghouse in Court. The only enforcement power for alleged HIPAA violations is the filing a complaint with The Office for Civil Rights of the U.S. Department of Health and Human Services using the complaint procedure.

In this case, you cannot use the alleged enforcement of HIPAA rights by a hospital security officer as justification or excuse for any of the actions taken by the hospital security officer towards a patient, regardless of the patient's conduct. A hospital security officer has no legal right to enforce HIPAA.

The trial court, however, provided the following HIPAA instruction to the jury as requested by defendant:

Now the HIPAA privacy rule establishes national standards to protect individual's medical records and other individually identified health information, collectively defined as protected health information and applies to health plans, healthcare, clearinghouses and those healthcare providers that conduct certain healthcare and transactions electronically.

The rule requires appropriate safe parish to protect the privacy of protected health information and sets limits and conditions on the uses and disclosures than may be made of such information without an individual's authorization. The rule also gives individuals rights over their protected health information, including rights to examine and obtain a copy of their health records, to direct a covered entity to transmit to a third party an electronic copy of their protected health information and electronic health records and to request corrections.

The trial court did not err or otherwise abuse its discretion by giving the jury the HIPAA instruction requested by defendant. While the competing HIPAA instructions both accurately summarized the federal law itself, the final paragraph in plaintiff's instruction could have misled the jury about the case. Defendant did not use HIPAA as an excuse or justification for her conduct. Indeed, she did not use the term "HIPAA" once during her trial testimony. Rather, defendant repeatedly testified that hospital "policy" is that video recording is prohibited. The reasons for this policy, both for privacy and security, are self-evident, and is evident from the record before us. Moreover, defense counsel told the jury during his closing argument that "[t]his case is not about HIPAA." To the extent that HIPAA occasionally was referenced during trial, those references simply noted that there is a federal basis for protecting privacy. In other words, while HIPAA is a complicated, detailed law, it is commonly known as a law protecting patient privacy.

Beaumont, as with any other hospital, has an interest in protecting patient privacy in accordance with the requirements of HIPAA.

To summarize, the instruction prepared by defendant offers a neutral explanation of HIPAA, while the instruction prepared by plaintiff incorrectly implies that defendant was using HIPAA as her legal defense at trial. Thus, the trial court did not err by giving the jury the instruction required by defendant.[15]

## IV. MOTION IN LIMINE

Plaintiff argues that the trial court erred by denying his motion in limine to preclude evidence of his marijuana use.[16] Plaintiff asserts that evidence that he used marijuana was irrelevant, prejudicial, and violated MRE 404(b).[17] We disagree.

A trial court's decision whether to admit evidence is reviewed for an abuse of discretion. See *Green v Jerome-Duncan Ford, Inc*, 195 Mich App 493, 498; 491 NW2d 243 (1992).

"Relevant evidence is evidence 'having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 667; 819 NW2d 28 (2011), quoting MRE 401 (emphasis omitted).[18] Further, at the time relevant to this case, MRE 403 provided that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" "Evidence is not inadmissible simply because it is prejudicial." *Waknin v Chamberlain*, 467 Mich 329, 334; 653 NW2d 176 (2002). "It is only when the probative value is substantially outweighed by the danger of unfair prejudice that evidence is excluded." *Id*. (cleaned up). Finally, MRE 404(b) provided that

---

[15] Incidentally, the legal issue here arguably was whether defendant was justified or privileged to commit a battery to maintain order in the hospital. See, e.g., *Celestine v United States*, 841 F2d 851 (CA 8, 1988) (discussing whether hospital staff was justified in committing false imprisonment against an individual behaving erratically); *Person v Children's Hosp Nat'l Med Ctr*, 562 A2d 648, 650-651 (DC App, 1989) (discussing whether hospital staff was privileged to use force to remove an individual from the hospital). However, justification or privilege was not litigated at trial, at least not explicitly.

[16] While we are unable to identify a particular written motion in the record, defendant seemingly agrees that such a motion was filed. We note that at an August 29, 2022 pretrial hearing, plaintiff briefly argued that deposition testimony about his marijuana use should be excluded because it was irrelevant, and "medical marijuana use is kind of controversial." The trial court ruled that the testimony was admissible.

[17] We question whether plaintiff's argument regarding MRE 404(b) was preserved at trial, but we will nonetheless address it for completeness.

[18] MRE 401, along with MRE 403 and 404, were stylistically edited effective January 1, 2024.

"evidence of other crimes, wrongs, or acts of an individual is inadmissible to prove a propensity to commit such acts."

The trial court did not abuse its discretion by admitting evidence of plaintiff's marijuana use under MRE 401, 403, or 404(b). With regard to MRE 401, evidence that plaintiff used marijuana to treat his mental or physical health, or both, both before and after the event in question was logically relevant to show that the event did not affect his mental or physical health. In other words, because plaintiff used marijuana for medical purposes both before and after the event, it was more probable that his mental and physical health were unchanged in light of the event than it would have been without the evidence.[19] With regard to MRE 404(b), that rule of evidence is inapplicable because defendant did not introduce evidence of plaintiff's marijuana use to establish conduct in conformity with marijuana use. See *People v Lukity*, 460 Mich 484, 499; 596 NW2d 607 (1999) (explaining that MRE 404(b) was inapplicable because "the prosecutor did not attempt to introduce evidence that defendant smoked marijuana with his son to prove that defendant had acted in conformity with his character for marijuana use").

Finally, with regard to MRE 403, we acknowledge that evidence that plaintiff used marijuana, even if exclusively for medical purposes, might have had a limited prejudicial effect. However, we agree with the trial court that "it's a fact that people use marijuana and they're [sic] derivatives for pain, medical agents, et cetera." Indeed, Michigan voters recently overwhelmingly approved both the use of medical marijuana and the use of legalized, recreational marijuana. Temporally, this suggests that the jury was unlikely to harbor substantial prejudices against an individual who uses marijuana. Moreover, defense counsel did not belabor the point during opening statement, questioning, or closing argument. He did not, for example, imply or suggest that the jury should disbelieve plaintiff because plaintiff smokes marijuana. Under these circumstances, the trial court did not abuse its discretion by admitting evidence that plaintiff used marijuana notwithstanding MRE 403.

## V. DIRECTED VERDICT

Plaintiff argues that the trial court erred by denying his motion for a directed verdict on the respective assault and battery claims.[20] We disagree.

We review de novo a trial court's decision regarding a directed verdict. *Krohn v Home-Owners Ins Co*, 490 Mich 145, 155; 802 NW2d 281 (2011).

MCR 2.516 provides that "[a] party may move for a directed verdict at the close of the evidence offered by an opponent. The motion must state specific grounds in support of the

---

[19] We note that defendant also introduced, without objection from plaintiff, evidence that he received other medical treatments for the same logical purpose.

[20] Because plaintiff did not move for a directed verdict on his assault claim, that aspect of his argument is unpreserved for review. See *Garabedian v William Beaumont Hosp*, 208 Mich App 473, 475; 528 NW2d 809 (1995). Nonetheless, it is meritless for the reasons explained with regard to the battery claim.

motion." "A directed verdict is appropriate only when no factual question exists upon which reasonable minds could differ." *Anaya v Betten Chevrolet, Inc*, 330 Mich App 210, 215; 946 NW2d 560 (2019). "In reviewing a directed verdict, we review all the evidence presented up to the time of the motion to determine whether a question of fact existed." *Id*. "In deciding whether a directed verdict is appropriate, the trial court must view the testimony and all legitimate inferences from the testimony in the light most favorable to the nonmoving party; we review the evidence in the same manner." *Id*. at 215-216.

"A battery is an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Lakin v Rund*, 318 Mich App 127, 131; 896 NW2d 76 (2016) (quotation marks and citation omitted). See also *Clarke v K Mart Corp*, 197 Mich App 541, 549; 495 NW2d 820 (1992) ("A battery occurs when there is a wilful, harmful, or offensive touching of the plaintiff or of an object that is attached to the plaintiff and practically identified with the plaintiff's body.") (cleaned up). "It is not necessary that the touching cause an injury." *Lakin*, 318 Mich App at 131. In *Tinkler v Richter*, 295 Mich 396; 295 NW 201 (1940), our Supreme Court explained that "[a] battery . . . is the willful touching of the person of another by the aggressor or by some substance put in motion by him; or, as it is sometimes expressed, a battery is the consummation of the assault." *Id*. at 401 (quotation marks and citation omitted). Assault, in turn, is "defined as any intentional, unlawful offer of corporal injury to another by force, or force unlawfully directed toward the person of another, under such circumstances as create a well founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented." *Id*. (quotation marks and citation omitted).

The trial court did not err by denying plaintiff's motion for a directed verdict with respect to his battery claim. Defendant testified that she removed the cellular phone from plaintiff's hand so she could delete his video recording, and there is nothing in her testimony to suggest that she intended a "harmful or offensive touching" of plaintiff, or of "something closely connected" with plaintiff, i.e., the phone itself. See *Lakin*, 318 Mich App at 131. Indeed, the body camera video shows that she removed the phone from his hand in a straightforward manner, promptly deleted his video recording, returned the phone back to him, and walked away. Moreover, defendant testified that her intent was to effectuate hospital policy not allowing video recordings by patients and visitors. Further, the body camera video was entirely consistent with that testimony. Further, putting the issue of defendant's intent aside, based on the video evidence presented at trial, a reasonable jury could find that it was not harmful or offensive for defendant to touch and temporarily remove plaintiff's phone to effectuate hospital policy, and that defendant did not otherwise possess any harmful or offensive intent. See *Anaya*, 330 Mich App at 215. As such, there was, at a minimum, a question of fact as to whether defendant intended a harmful or offensive touching, or whether such a touching actually occurred.[21] Accordingly, the trial court correctly denied plaintiff's motion for a directed verdict with respect to his battery claim.

---

[21] Similarly, there was, at a minimum, a question of fact as to whether defendant intended to injure plaintiff. See *Tinkler*, 295 Mich at 401. There is nothing in her testimony to suggest that she

VI.  DE BENE ESSE DEPOSITION

Plaintiff argues that the trial court erred by admitting the de bene esse deposition of Dr. Grias because there was no showing that she was unavailable to testify at trial.[22]  We disagree.

"Appellate review of a trial court's decision on the admissibility of depositions is limited to a determination of whether the court abused its discretion."  *Bonelli v Volkswagen of Am, Inc*, 166 Mich App 483, 502; 421 NW2d 213 (1988).  "The burden of establishing admissibility rests on the party seeking admission."  *Id*.

MCR 2.308(A) provides that "[d]epositions or parts thereof shall be admissible at trial or on the hearing of a motion or in an interlocutory proceeding only as provided in the Michigan Rules of Evidence."  In this regard, MRE 804(b)(2) allows for the admission of deposition testimony in certain cases in which "the declarant is unavailable as a witness."  Thus, a de bene esse deposition cannot be admitted if the witness is available, i.e., "in a condition to be sworn." *Emlaw v Emlaw*, 20 Mich 11, 12 (1870).  See also *Childress v Jubelt*, 45 Mich App 181, 182; 205 NW2d 889 (1973).

On appeal, plaintiff correctly observes that there was no showing that Dr. Grias was unavailable to testify at trial.  Ordinarily, therefore, the trial court would have abused its discretion by admitting her deposition testimony.  Defendant does not dispute that observation, but she contends that the parties had an off-the-record agreement to use the de bene esse depositions of Dr. Grias and other doctors.  Specifically, defendant represents as follows:

> The parties appeared for trial on 10/04/21.  Unfortunately, the Trial Court adjourned the trial due to an older case taking priority.  The Trial Court rescheduled the trial for 11/29/21.  To secure Dr. Grias' trial appearance, on 11/01/21, Appellant subpoenaed Dr. Grias to appear on 11/12/21 to testify at trial.  However, before the parties could appear for trial, the Trial Court again adjourned the trial, this time to 01/21/22.  Knowing that the parties were not going to trial on 11/29/21, and that it would be difficult to continue to coordinate the depositions of multiple physicians given the uncertainty, the parties agreed to conduct multiple De Benne Esse depositions to avoid continued inconvenience and to streamline the trial.  Unfortunately, the parties did not confirm this agreement in writing.  However, the conduct of the parties shows that the parties agreed to take the De Benne Esse depositions of all physicians involved in this matter to play back to the jury and avoid issues with subpoenaing the doctors after multiple adjournments.

---

intended to injure plaintiff, and the body camera video simply does not show any conduct that suggests such an intent.

[22] A de bene esse deposition is a deposition taken "conditionally or provisionally in anticipation of being used in case the witness cannot afterwards be examined in court."  *Warfield v City of Wyandotte*, 117 Mich App 83, 88 n 1; 323 NW2d 603 (1982).

-14-

After a review of the record, the accuracy of defendant's representation about the parties' agreement cannot reasonably be disputed. While the parties would have been better-advised to place a stipulation on the record regarding the use of the de bene esse depositions, we agree with defendant that the record implicitly but clearly shows that the parties agreed to use the de bene esse depositions of multiple witnesses, specifically Dr. Grias and three other doctors. First, at an August 29, 2022 pretrial hearing, the parties and the trial court devoted significant time to purging the depositions of those doctors, with plaintiff's counsel himself informing the trial court at the outset that the deposition of Dr. Grias was "[t]he hardest one." It would have been completely illogical for the parties and the trial court to spend that time purging the depositions if there was no agreement between the parties to use those depositions at trial in lieu of live testimony.

Second, during his opening statement, defense counsel informed the jury that it would hear the deposition testimony of four doctors, including Dr. Grias:

> I told you you're gonna hear from four doctors, and that's how I'm gonna finish my opening statement and tell you what those four doctors are gonna say. Dr. Cerone, Dr. Shingles, Dr. Grias and Dr. Saad. These are the four trained doctors who have seen him . . . .

> I gotta tell you that because this lawsuit's been going on for so long 'cause of the pandemic, we would usually bring the doctors, some of them in here live to testify and maybe some of them on video. Because this has been going on so long we just kept taking the doctor's trial depositions by video.

> So this is not my guess about what they're gonna say or my review of their medical records, my hope they're gonna say. The videos that you are going to play I was at every single one of these depositions from all of these doctors. . . .

Then, when defense counsel began to summarize the deposition testimony of Dr. Cerone, plaintiff's counsel objected that the depositions had not yet been introduced into evidence:

> Your Honor, I have to object to the cherry-picking from depositions that are not in evidence yet. The Jury will hear the entire deposition. It's patently unfair because they're not in evidence to read excerpts from them when there was robust cross-examination on all the issues therein.

Again, as with the deposition purging at the August 29, 2022 pretrial hearing, the conduct of the parties during opening statements would be completely illogical if there was no agreement to use the deposition testimony of Dr. Grias and the other doctors. Defense counsel informed the jury that it would hear the deposition testimony of four doctors, including Dr. Grias, without objection from plaintiff's counsel. Shortly thereafter, plaintiff's counsel did object on another basis, but told the trial court that "[t]he Jury will hear the entire deposition." The only explanation of these assertions by counsel is that the parties had an existing arrangement to use the deposition testimony of the four doctors.

To summarize, we agree with plaintiff that there was no showing that Dr. Grias was unavailable to testify at trial, which ordinarily is required for the admissibility of a de bene esse deposition. However, the conduct of counsel, including plaintiff's counsel, both before and during

trial clearly indicates the existence of an off-the-record agreement that de bene esse depositions would be used for certain witnesses, including Dr. Grias. Thus, no error occurred by the failure to show that Dr. Grias was unavailable to testify. "Reversible error cannot be error to which the aggrieved party contributed by plan or negligence." *Byrne v Schneider's Iron & Metal, Inc*, 190 Mich App 176, 184; 475 NW2d 854 (1991).

## VII. PROSECUTORIAL DECISION PROCESS

Plaintiff argues that the trial court erred by allowing defendant to testify "about the decision-making process behind the prosecutor's decision not to bring criminal charges against her," as well as allowing defense counsel to state during closing argument that a full investigation was performed and the prosecutor elected against filing any charges. Specifically, plaintiff argues that this testimony and closing argument was irrelevant and prejudicial because the jury should not have been informed that no charges were filed against defendant, and there was no foundation for defense counsel's assertion during closing argument that a "full investigation" was performed.[23] In other words, the fundamental issue here is whether the trial court erred by allowing the jury to hear testimony that no criminal charges were filed against defendant. We conclude that any error was harmless.

A trial court's decision whether to admit evidence is reviewed for an abuse of discretion. See *Green*, 195 Mich App at 498. Moreover, "[w]hen reviewing asserted improper conduct by a party's lawyer, we must first determine whether the lawyer's action was error, and, if so, whether the error requires reversal." *Wilson v Gen Motors Corp*, 183 Mich App 21, 26; 454 NW2d 405 (1990). "A lawyer's comments usually will not be cause for reversal unless they indicate a deliberate course of conduct aimed at preventing a fair and impartial trial." *Id*. "Reversal may also be required where counsel's remarks were such as to deflect the jury's attention from the issues involved and had a controlling influence upon the verdict." *Id*.

In this case, on the third day of trial, defense counsel elicited the following testimony from plaintiff on cross examination:

> Q: When you left Beaumont Wayne that day you went to Taylor Urgent Care, right?
>
> A: No, we went to Wayne Police.
>
> Q: And you asked the police to investigate?

---

[23] Plaintiff did not object to that aspect of defendant's closing argument, so his issue on appeal is waived to that extent. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). In any event, it is meritless because there was testimony that the police investigated plaintiff's allegation that defendant assaulted him, and that investigation included watching the body camera video. From this testimony, defense counsel reasonably could infer and argue to the jury that a "full investigation" was performed.

A: We made a police report.

Q: And nothing came of that, right?

A: I never got anything.

Q: Right, that's 'cause no charges were brought against anybody and the police said nobody did anything wrong, right?

[Plaintiff's Counsel]: Your Honor, I didn't open the door to this, he did. We had a motion hearing where we had a conversation with this, the lack of criminal charges or criminal charges in this case or convictions in this case are completely different standards, as a result of that you indicated that unless I opened the door to it we weren't gonna get into it.

Now he's opened the door to it and I'm not exactly sure how we're gonna –

THE COURT: The witness can answer if any criminal charges resulted from this incident at Beaumont Wayne.

[Defense Counsel]: Thank you, Your Honor. . . .

Q: No criminal charges resulted from this incident at Beaumont Wayne, right?

A: I didn't know how to follow up with it, no.

Q: The answer to my question is correct.

A: Correct.

This testimony subsequently was corroborated by defendant and plaintiff's wife, both of whom acknowledged upon questioning by the parties' counsel that charges were not filed against defendant as a result of the event in question. Later, during closing argument, defense counsel referenced the lack of charges:

And then when we get to the incident itself we have immediately after he's allegedly got this ripping and tearing in his shoulder and he is having so much problems. He doesn't go to the hospital or stay in the hospital, he goes to the police station. They tried to trick you on that one too and say no investigation was done, but actually a full investigation was done and the prosecutor decided not to bring any charges.

We are inclined to agree with plaintiff that evidence that charges were not filed against defendant presumptively was inadmissible. See *Cook v Auto Club Ins Ass'n (On Remand)*, 217 Mich App 414, 417-418; 552 NW2d 661 (1996) (holding that "evidence of acquittal or lack of prosecution is not admissible in an insured's suit against the insurer" because such evidence "goes

-17-

to the principal issue before the jury," and criminal and civil cases have different burdens of proof). Applying *Cook* to the facts before us, the trial court should have precluded defendant from presenting evidence that no charges were filed against her.

Arguably, plaintiff opened the door to this evidence because he testified unprovoked, in response to a leading question about his activity after he left the hospital, that he and his wife went to the police. Because plaintiff mentioned the police, it may have been appropriate for defense counsel to clarify that no charges were filed against defendant, so the jury would not be left with a false impression.[24]

In any event, even if plaintiff did not open the door to presentation of this evidence, we conclude that any error was harmless. See MCR 2.613(A) ("An error in the admission or the exclusion of evidence . . . is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice."). The jury was able to extensively and repeatedly view the body camera video of the event in question, and it clearly shows that defendant did not act in a violent or threatening manner. The video does not corroborate plaintiff's allegations that defendant aggressively removed the cellular phone from his hand in a manner that would cause any physical injury, and the expert medical testimony confirmed the lack of physical injury. In other words, because of the body camera video, this case was not a credibility contest or one in which the fundamental facts could reasonably be disputed. Rather, this case simply was one in which the undisputed facts, as shown on the video, either did or did not constitute the respective torts of assault, battery, and intentional infliction of emotional distress. The jury viewed the video and concluded that these torts did not occur. Under these circumstances, where the disputed conduct was closely videotaped and presented to the jury, any error with regard to evidence that no charges were filed against defendant was harmless.

## VIII. CIVIL-RIGHTS LITIGATION

Finally, plaintiff argues that the trial court erred by granting defendant's motion in limine to preclude testimony about the civil-rights lawsuit that previously was filed against her. Specifically, plaintiff argues that defendant lied under oath when she testified at her deposition that she had no knowledge of the fact that she was sued by Bowman in 2015, so he should have been able to examine her about that lie to undermine her credibility under MRE 607 and 608(b).[25] We disagree.

---

[24] Defendant states on appeal that she "required the testimony after Appellant attempted to mislead the jury regarding Sergeant Olivia Moss-Fort's alleged friendship potentially clouding prosecution." In other words, defendant argues that plaintiff opened the door during his examination of her. This is incorrect. The first reference to the lack of charges was during the cross examination of plaintiff, as block-quoted herein. Plaintiff testified before defendant.

[25] Plaintiff does not argue that evidence of the 2015 Bowman lawsuit was admissible for any other purpose.

"We review a trial court's decision on a motion in limine for an abuse of discretion." *Bellevue Ventures, Inc v Morang-Kelly Inv, Inc*, 302 Mich App 59, 63; 836 NW2d 898 (2013).

In this case, defendant testified during her deposition about her lack of recollection regarding the 2015 Bowman lawsuit as follows:

> Q: Well, according to the Wayne County register of actions you were sued in 2015; do you have any recollection of that?
>
> A: I don't.
>
> Q: You were never sued by a man named Scott Bowman; does that name sound familiar?
>
> A: It sounds familiar.
>
> Q: You don't understand that you were sued in 2015 by somebody named Scott Bowman?
>
> A: No.
>
> Q: And it was in your capacity as a security guard at Wayne County Community College?
>
> A: I was a security officer at Wayne County Community College, and I didn't know of any suit. We did go to court. He was fighting a ticket that he had gotten.
>
> Q: Well, right, but then they filed a civil lawsuit against you; do you remember that?
>
> A: No.
>
> Q: Can you describe the nature of why – so you don't know – you don't have any knowledge of them suing you or Wayne County Community College at all?
>
> A: No.

At the time relevant to this case, MRE 607 provided that "[t]he credibility of a witness may be attacked by any party, including the party calling the witness." MRE 608(b) provided that, in the discretion of the trial court, specific instances of a witness's conduct may, "if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

Initially, we note that extrinsic evidence of the 2015 Bowman lawsuit would not have been admissible under MRE 608(b). See *Wischmeyer v Schanz*, 449 Mich 469, 478; 536 NW2d 760 (1995). More importantly, while MRE 608(b) presumably would allow plaintiff to inquire about an instance of lying by defendant during her deposition, the deposition transcript does not reveal an instance of lying. Rather, defendant denied "remember[ing]" or "understand[ing]" that she was sued by Bowman. In other words, defendant denied having any recollection of the 2015 Bowman lawsuit. This testimony is different from an outright denial.

Moreover, defendant's denial is easily plausible. The Wayne Circuit Court decision dismissing the 2015 Bowman lawsuit noted that "[o]n December 4, 2015, Defendant Olivia Moss-Fort and Defendant WCCC filed a notice of removal of this action to the United States District Court for the Eastern District of Michigan," and "[o]n April 19, 2016, Defendants WCCC and Moss-Fort filed the instant motion for summary disposition." Because the two defendants filed these documents jointly, it may be inferred that they were represented by the same counsel. Indeed, judicial experience indicates that when an individual governmental employee is sued along with a governmental entity, they often are represented by the same counsel. Thus, it is certainly possible, if not highly likely, that defendant was unaware that she was named in the 2015 Bowman lawsuit because counsel for Wayne County Community College exclusively handled the matter. Further, the case was dismissed at a preliminary stage before trial, reinforcing the likelihood that defendant truthfully testified that she lacked recollection of the 2015 Bowman lawsuit. Therefore, defendant's deposition testimony was not an instance of "untruthfulness" subject to MRE 608(b).

Accordingly, the trial court did not abuse its discretion by precluding evidence of the 2015 Bowman lawsuit or by precluding plaintiff's counsel from questioning defendant about it.

## IX. CONCLUSION

There were no errors warranting relief. We affirm.

/s/ Michael J. Riordan